Argued and submitted August 31, reversed and remanded October 12, respondent's petition for reconsideration filed October 26 allowed by opinion December 7, 2005
See 203 Or App 35, 125 P3d 22 (2005)

## STATE OF OREGON,
*Respondent,*

*v.*

## TAMARA MARIE HOLCOMB,
*Appellant.*

### 02CR0999FE; A120471

121 P3d 13

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne,

Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Elizabeth A. Gordon, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum,* Judges.

HASELTON, P. J.

---

* Rosenblum, J., *vice* Ceniceros, S. J.

### HASELTON, P. J.

Defendant appeals from a conviction on one count of possession of a controlled substance (methamphetamine). ORS 475.992(4)(b). She assigns error to the trial court's denial of her motion to suppress evidence, asserting that the evidence was obtained as the result of an unlawful stop. We review for errors of law, *State v. Sopiwnik*, 176 Or App 127, 129, 30 P3d 430 (2001), and agree with defendant that the stop was not supported by reasonable suspicion. Accordingly, we reverse and remand.

The following facts are undisputed. Early in the afternoon of May 11, 2002, Corporal Bill Bradburn of the Douglas County Sheriff's Department saw defendant walking along the shoulder of Highway 99 near Curtin, just north of Drain. There was little traffic, and Bradburn initially noticed defendant because she was in a rural area without many homes. Because defendant was "kind of turning around dancing" as she walked, Bradburn was concerned that she might be mentally unstable and at the risk of drifting into the road.

Bradburn turned his patrol car around, pulled up behind defendant, and then approached her. He noticed that she was wearing a jacket over only one of her arms so that her left arm was covered, but her right arm was exposed. When Bradburn looked at defendant's right arm more closely, he noticed track marks, which are indicative of intravenous drug use. Bradburn also noticed that defendant's clothing was "dirty and unkempt," which made it "[look] like she'd been up all night." According to Bradburn, in his experience, people who "use narcotics will often when they're under the influence of narcotics stay up all night." Nevertheless, after speaking with defendant, Bradburn concluded that she was not under the influence of a controlled substance.

After questioning defendant about her reasons for being on the side of the road,[1] Bradburn asked defendant for identification, and she gave him an Oregon identification

---

[1] Defendant told Bradburn that she had been dropped off by some friends after an argument and that she was now walking home to Eugene.

card. Bradburn used that identification to conduct a warrant check, which showed that defendant was on probation for a drug offense. With that new information, Bradburn asked defendant if she had any methamphetamine or marijuana on her person, and she produced three syringes. At that point, defendant, who had been squeezing her legs together, told Bradburn that "she had to go to the bathroom real bad." Bradburn responded by asking defendant, "[D]o you want to give me the methamphetamine also?" Defendant then "rolled her eyes" and handed him two small bags, saying, "It's meth"; the two bags did, in fact, contain methamphetamine. Thereafter, Bradburn permitted defendant to urinate behind some bushes.

Defendant was charged with one count of possession of a controlled substance. Before trial, she moved to suppress her statements and the methamphetamine, contending that they were derived from an unlawful stop. As pertinent to our review, defendant argued that (1) she had been stopped when Bradburn obtained her identification; and (2) that stop was unsupported by reasonable suspicion of criminal activity. The state's response was limited to disputing those two propositions. Ultimately, the trial court denied suppression, concluding that "there's not a stop. I think this is mere conversation" and that, although "this is pretty close," Bradburn had reasonable suspicion of criminal activity. Defendant was subsequently convicted.

On appeal, defendant reiterates that taking her identification constituted a stop and that, at the time of the stop, Bradburn did not have reasonable suspicion that she possessed illegal drugs. We agree with defendant.

ORS 131.615(1) provides:

> "A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

In *State v. Jacobus*, 318 Or 234, 239, 864 P2d 861 (1993), the Supreme Court established the two-step analysis we use to determine the legality of a stop under that statute. The first issue is whether a stop occurred. If so, the second issue is

whether the officer had reasonable suspicion to justify the stop. *Id.*

■ Here, Bradburn's conduct in obtaining defendant's identification effected a stop. *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), which the Supreme Court decided long after the trial court's ruling in this case, is conclusive. In *Hall*, the court held that taking a suspect's identification and calling dispatch to conduct a warrant check constitutes a stop. 339 Or at 19. Accordingly, our inquiry reduces to whether the stop here was supported by reasonable suspicion.

The reasonable suspicion standard is "intended to be less than the standard for probable cause * * *." *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977). The officer must act under a "belief that is reasonable under the totality of the circumstances existing at the time" of the stop, ORS 131.605(5), and that belief must be objectively based in "observable facts." *Valdez*, 277 Or at 629. Thus, we assess whether the facts known to Bradburn at the time he took defendant's identification were sufficient "to establish an objectively reasonable suspicion that, *at the time of the stop*, defendant was in possession of drugs." *State v. Ehret (A111248)*, 184 Or App 1, 9, 55 P3d 512 (2002) (emphasis added).

■ The facts here did not establish such an "objectively reasonable suspicion." At the time that Bradburn obtained defendant's identification, he was aware of circumstances— the track marks on defendant's arm—indicating that she probably, almost certainly, used unlawful controlled substances. However, notwithstanding his initial concerns about defendant's "dancing" on the shoulder of the highway, by the time he obtained her identification Bradburn had concluded that defendant was not, in fact, under the influence of a controlled substance. Rather, Bradburn's concern was that, given defendant's disheveled appearance, she might have used drugs the night before. However, Bradburn offered *no* assessment of the likelihood that someone who may have used drugs the night before would still have controlled substances in his or her possession roughly 12 hours later.

■ Ultimately, the state's position depends on the proposition that a person's recent drug use is sufficient, without

more, to establish reasonable suspicion of present drug possession. No Oregon case endorses that proposition, and we decline to do so here. *See Ehret (A111248)*, 184 Or App at 9 (extension of traffic stop was unlawful because police lacked reasonable suspicion of drug possession: "The fact that defendant had past involvement with drugs does not give rise to a reasonable suspicion that he possessed drugs at the time of the traffic stop[.]"). Although the assessment of reasonable suspicion in each case is, necessarily, fact specific, the state's position on this record, if accepted, would effectively sanction nonparticularized, status-based stops of habitual drug users. The law does not go so far.[2]

Because Bradburn's stop of defendant was not supported by reasonable suspicion, the motion to suppress should have been granted.

Reversed and remanded.

---

[2] Because defendant here was not under the influence of a controlled substance at the time of the stop, we need not address, and imply no view regarding, whether, or to what extent, the assessment of reasonable suspicion would differ if the person subjected to the stop were under the influence of a controlled substance. Similarly, we imply no view as to the potential significance of an officer's testimony regarding any predictive relationship in particular circumstances between recent or contemporaneous drug use and present possession.