Argued and submitted September 26, 2008, reversed and remanded June 10, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOHN FRIAS,
*Defendant-Appellant.*

Deschutes County Circuit Court
06FE0541SF; A133906

210 P3d 914

Joshua B. Crowther, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan,

Chief Defender, Legal Services Division, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Carson, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine. ORS 475.894. He assigns error to the denial of his motion to suppress evidence. For the reasons stated below, we conclude that the trial court erred in failing to suppress evidence obtained as a result of a traffic stop that was extended without reasonable suspicion of criminal activity. We reverse and remand.

We state the facts consistently with the trial court's explicit and implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). At approximately 10:00 p.m. on March 17, 2006, defendant failed to dim the high beams of his vehicle's headlights as the vehicle closely followed a police car operated by Oregon State Trooper Baird. ORS 811.515(6)(b). Baird initiated a traffic stop based on that traffic violation. Baird told defendant the reason for the stop; defendant conceded that he had forgotten to dim his high beams. At some point, Baird obtained defendant's identification and the results of a records search, although the timing of those events is unclear from the record.

Baird testified that he engaged defendant in "small talk" during the stop by asking questions that he would typically ask a stopped driver. Baird asked defendant "where he was coming from"; defendant replied that he was at "a friend's house named Rick." Baird thought defendant was "evasive," and he further questioned him as to why he was at Rick's. In response, defendant "hemmed and hawed" before finally answering that "he had heard Rick was having problems, and he went to check on him."

Baird asked defendant if he was "on probation." Defendant responded that he was awaiting sentencing on a drug possession charge. Defendant stated that he was unemployed. Baird noticed that defendant had dark circles under his eyes. At that point, Baird asked defendant to leave the vehicle. After defendant left the vehicle, Baird asked him to empty his pockets "to show me that he didn't have anything on him." Defendant complied by turning his pockets inside out. Then Baird asked if defendant would "mind pulling up his pants legs a little bit," which he did. Baird asked about a

suspicious item protruding from the inside of one of defendant's socks. Defendant said that it was a glass pipe and pulled out the pipe. Baird noticed visible residue, which he believed was methamphetamine, and arrested defendant.

Defendant was charged with unlawful possession of methamphetamine, ORS 475.894. Before trial, defendant moved to suppress all evidence obtained during the encounter, claiming that the evidence was the product of an unlawful extension of the traffic stop in violation of his rights under Article I, section 9, of the Oregon Constitution.[1] The trial court denied the motion. Defendant entered a conditional guilty plea, reserving the right to appeal the trial court's denial of his motion to suppress. Defendant was convicted, and this appeal followed.

On appeal, defendant assigns error to the denial of his motion to suppress, reiterating his arguments made to the trial court. The state concedes that, if Baird did not have reasonable suspicion to believe defendant had engaged in or was about to engage in criminal activity, then Baird unlawfully extended the scope of the traffic stop when he asked defendant to get out of the vehicle and empty his pockets. We accept the state's concession and reverse. We conclude that Baird's suspicion of criminal activity was not objectively reasonable under these facts. We therefore need not address the parties' arguments about the lawfulness of the preceding conversation between defendant and Baird.

 Baird's initial stop of defendant was lawful. Defendant committed a violation of ORS 811.515(6)(b) (requiring use of low beams when following another vehicle closer than 350 feet) in the trooper's presence. ORS 810.410(2)(a). Nonetheless, an unjustified extension of a traffic stop may constitute a "seizure" of a person within the meaning of Article I, section 9. To be lawful under ORS 131.615(1) and Article I, section 9, the extension of an otherwise lawful traffic stop must be justified by reasonable suspicion of criminal

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

activity.[2] "Reasonable suspicion as a basis for a stop or a detention requires that the officer subjectively believes that the person has committed a crime and that the belief is objectively reasonable, in light of the totality of the circumstances." *State v. Ehret*, 184 Or App 1, 7, 55 P3d 512 (2002); *see also* ORS 131.605(5). Here, Baird testified that he believed defendant might be involved in the use or distribution of methamphetamine. In determining whether Baird's belief was objectively reasonable, "we look to the objective facts known to the officer at the time of the stop." *Ehret*, 184 Or App at 9 (citing *State v. Valdez*, 277 Or 621, 561 P2d 1006 (1977)).

The trial court concluded:

"At that point, the officer then proceeded to follow the defendant and initiated a traffic stop. At the time he approached the defendant, he indicated he was stopping him for failure to dim his headlights. The defendant acknowledged that.

"At the same time then, the officer engaged in—and the phraseology, I think the officer used is small talk. During the question—during the conversation or the small talk conversation, the officer indicated some—some hesitancies, some inconsistency—not inconsistency, some evasiveness upon the defendant, based upon his questions which started to raise the suspicion of the officer.

"At the same time, the officer noted—and we don't have information as to when the question was answered or what the circumstances led up to the—the defendant making the statement that he was pending sentencing on a methamphetamine conviction.

"At that point, the officer did observe and certainly had because of the stop—initiating the stop had reasonable suspicion that there was other criminal activity going, based upon his experience of circles under the eyes and the evasiveness of the defendant and the fact that he was pending sentencing that he required that the defendant exit the vehicle and then proceeded from there."

---

[2] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

We accept the court's factual findings but disagree that those findings establish that Baird's suspicion of criminal activity was objectively reasonable under the totality of the circumstances. The issue is whether the facts known to Baird at the time he told defendant to get out of the vehicle and empty his pockets were sufficient "to establish an objectively reasonable suspicion that, *at the time of the stop*, defendant was in possession of drugs." *Ehret*, 184 Or App at 9 (emphasis added).

The facts relied on by the trial court do not supply reasonable suspicion that defendant possessed drugs at that time. Simply put, whatever the inference that could be reasonably drawn about defendant's *past* drug use, there was no evidence of a current or imminent crime, *e.g.*, possession of a controlled substance (ORS 475.840(3)) or driving under the influence of an intoxicant (ORS 813.010). The fact that defendant was awaiting sentencing on a drug charge does not give rise to reasonable suspicion that, at the time the officer prolonged the stop, defendant was engaged in criminal activity. Similarly, a person may show signs of past drug use, as possibly suggested by the dark circles under defendant's eyes. But that past drug use, without more, does not make it reasonable to suspect that a current drug crime has occurred or is imminent. And that inference is even weaker when, as here, the physical symptom can be caused by any number of things. *Cf. State v. Holcomb*, 202 Or App 73, 77, 121 P3d 13, *modified on recons*, 203 Or App 35, 125 P3d 22 (2005) (the facts that the officer observed track marks on the defendant's arms, saw the defendant "dancing" on the shoulder of the highway, and discovered that she was on probation did not amount to reasonable suspicion of possession of a controlled substance). In addition, defendant's evasive reaction to questioning that he is constitutionally entitled to refuse to answer cannot, under these circumstances, form the basis for reasonable suspicion. *State v. Foland*, 224 Or App 649, 656, 199 P3d 362 (2008).

The state argues that, although the facts that defendant was evasive, awaiting sentencing, and had dark circles under his eyes might not justify reasonable suspicion of criminal activity by themselves, they are sufficient in light of the officer's assessment of those facts based on his training and

experience. Although we appreciate that a police officer's experience can cast a different light on seemingly innocent circumstances, the facts here are straightforward. It was not objectively reasonable to suspect present criminal drug activity solely because defendant had been involved in drugs in the past and did not want to fully answer police questions.

Accordingly, we conclude that, when Baird proceeded beyond the traffic investigation to ask defendant to step out of the vehicle and then proceeded to question and search him, the otherwise lawful traffic stop was transformed into an unlawful stop. There being no reasonable suspicion to support Baird's actions, we accept the state's concession and hold that the evidence found as a result of the illegality should have been suppressed. *See State v. Hall,* 339 Or 7, 115 P3d 908 (2005). The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.