Argued and submitted December 21, 2011, reversed and remanded June 20, 2012

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOHN LEONARD HOLDORF, JR.,
*Defendant-Appellant.*

Linn County Circuit Court
09061153; A144719

280 P3d 404

Alice Newlin-Cushing, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals from a conviction for possession of marijuana and methamphetamine, assigning error to the trial court's denial of his motion to suppress evidence. According to defendant, the evidence derived from an unlawful stop; he takes issue with the trial court's conclusion that the police officer who executed the stop had reasonable suspicion that defendant was involved in criminal activity and with the court's alternative conclusion that the stop was justified by officer safety concerns. We reverse and remand.

The following facts are not disputed. Albany Police Detective Davis was on duty at approximately 8:00 one morning when he noticed a blue SUV occupied by a driver and a passenger. Davis recognized the driver as a man named Watts. Davis knew that Watts had been convicted of a felony and was wanted on an outstanding warrant for violating parole; that he was under investigation for involvement in a methamphetamine ring; that he had been observed recently in the same blue SUV in what another officer believed was a drug transaction in a fast food restaurant parking lot; and that, according to that other officer, Watts had on another occasion attempted to elude capture in a high speed chase in the same blue SUV. Davis put out a call for other officers in the area, alerting them to be on the lookout for the SUV and relating that it was being driven by a wanted felon. Officer Salang heard the call and contacted Davis, who advised him to stop the SUV. He also told Salang that the driver was Watts and gave him a "thumbnail sketch" about Watts's suspected activities. Salang knew Watts from prior encounters and knew that there was an outstanding probation violation warrant for him.

Shortly thereafter, Salang spotted Watts driving the SUV and followed him until he committed a traffic infraction, at which point Salang activated his overhead lights. Watts pulled over and stopped in a K-Mart parking lot. Salang called for backup. He then approached the SUV and confirmed that the driver was, in fact, Watts. Salang asked Watts for his driver's license; Watts provided a jail inmate identification card instead.

Defendant was a passenger. Salang noticed that he appeared nervous and fidgety, and, based on those facts,

Salang suspected that he was under the influence of methamphetamine.

Salang then checked the warrant status of Watts and defendant. He learned that Watts was, as suspected, wanted on an outstanding warrant for violating probation, but that defendant was "clear." Defendant asked if he could leave. Salang, worried that defendant might circle back and stab or shoot him, told defendant he could not. Shortly thereafter Salang's backup arrived; the officers handcuffed and arrested Watts.

After Watts was handcuffed and arrested, Salang returned to the SUV and asked defendant if there were any weapons or contraband in it. Defendant told him that there was a pocket knife between the passenger seat and the door; when Salang opened the door, the knife was there. Salang then asked defendant if there were any other weapons or contraband in the SUV, and defendant replied that he was carrying a pocket knife. When defendant began to reach into his pocket to extract it, Salang ordered him not to do so, but defendant did not comply. At that point, Salang restrained defendant, told him to "settle down," informed him that he would be detained, told him he was not under arrest, but read him the *Miranda* warnings nonetheless. Defendant was then handcuffed and patted down. Salang felt the knife that defendant had referred to in his pocket; he also felt a hard rectangular shape. Further patdowns disclosed two additional containers. Salang extracted them from defendant's pocket and asked for consent to open them. Defendant declined. A drug dog was brought to the scene and alerted to the containers. An officer asked for consent to open them, and this time defendant consented. They contained the disputed contraband.

Defendant was charged with possession of marijuana, ORS 475.864(3), and possession of methamphetamine, ORS 475.894. At a pretrial hearing, he moved to suppress all of the evidence on the ground that it resulted from an unlawful stop. The court denied the motion, and defendant entered a conditional guilty plea, reserving the right to appeal the court's denial of the motion to suppress. Defendant was subsequently convicted.

On appeal, defendant renews the argument he made to the trial court that Salang stopped him without reasonable

suspicion that he was involved in criminal activity. Reasonable suspicion

> "requires an objective test of observable facts. Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience. If a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime, the officer has 'reasonable suspicion' and hence may stop the person for investigation."

*State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993) (citations and footnote omitted). The relevant "particular circumstances" include the totality of the circumstances existing at the time and place of the interaction between the officer and defendant. ORS 131.605(6). Here, it is indisputable that Salang stopped defendant when he told defendant that he was not free to leave. The circumstances confronting Salang at that time consisted of the following "specific and articulable facts": (1) Defendant appeared nervous, fidgety, and unwilling to look Salang in the eye, traits that led Salang to believe, based on his experience, that defendant was currently under the influence of methamphetamine. (2) There were no warrants out on defendant. (3) Defendant was in the company of a person suspected of being involved in drug crimes and who was the subject of an outstanding felony probation violation warrant. (4) Defendant had reportedly been in a vehicle that had been seen at what appeared to be a drug transaction; and (5) that same vehicle had apparently eluded a police officer.

Defendant points out that we have stated, "The mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion that that person is also involved with methamphetamine." *State v. Zumbrum*, 221 Or App 362, 369, 189 Or App 1235 (2008). He also notes that, in *State v. Holcomb*, 202 Or App 73, 77-78, 121 P3d 13, *adh'd to on recons*, 203 Or App 35, 125 P3d 22 (2005), we declined to endorse the proposition that "a person's recent drug use is sufficient, without more, to establish reasonable suspicion of present drug possession." And he calls our attention to the following discussion in *State v. Frias*, 229 Or App 60, 65-66, 210 P3d 914 (2009), noting its many similarities to the present case:

"The facts relied on by the trial court do not supply reasonable suspicion that defendant possessed drugs at that time. Simply put, whatever the inference that could be reasonably drawn about defendant's *past* drug use, there was no evidence of a current or imminent crime, *e.g.*, possession of a controlled substance (ORS 475.840(3)) or driving under the influence of an intoxicant (ORS 813.010). The fact that defendant was awaiting sentencing on a drug charge does not give rise to reasonable suspicion that, at the time the officer prolonged the stop, defendant was engaged in criminal activity. Similarly, a person may show signs of past drug use, as possibly suggested by the dark circles under defendant's eyes. But that past drug use, without more, does not make it reasonable to suspect that a current drug crime has occurred or is imminent. And that inference is even weaker when, as here, the physical symptom can be caused by any number of things. * * * In addition, defendant's evasive reaction to questioning that he is constitutionally entitled to refuse to answer cannot, under these circumstances, form the basis for reasonable suspicion.

"The state argues that, although the facts that defendant was evasive, awaiting sentencing, and had dark circles under his eyes might not justify reasonable suspicion of criminal activity by themselves, they are sufficient in light of the officer's assessment of those facts based on his training and experience. Although we appreciate that a police officer's experience can cast a different light on seemingly innocent circumstances, the facts here are straightforward. It was not objectively reasonable to suspect present criminal drug activity solely because defendant had been involved in drugs in the past and did not want to fully answer police questions."

(Emphasis in original; citations omitted.)

In response, the state points out that, in *Zumbrum*, 221 Or App at 369, we expressly noted that, unlike the officer in the present case, the arresting officer "did not suspect that [the] defendant was under the influence of methamphetamine and was not investigating him for any drug-related offense"; that, in *Holcomb*, 202 Or App at 78 n 2, we stated,

"Because [the] defendant here was not under the influence of a controlled substance at the time of the stop, we need not address, and imply no view regarding, whether, or to what

extent, the assessment of reasonable suspicion would differ if the person subjected to the stop were under the influence of a controlled substance";

and we note that there was no evidence of present drug intoxication in *Frias*, so that case, as well, is not on all fours with this one. Further, the state emphasizes that, even if none of the factors relied on by defendant is sufficient by itself, we must focus on the totality of the circumstances. *State v. Ehret*, 184 Or App 1, 7, 55 P3d 512 (2002).

The degree to which this area of law lacks bright lines is perhaps best illustrated by *State v. Regnier*, 229 Or App 525, 533-34, 212 P3d 1269 (2009), where we noted that, "[i]n general, individualized suspicion that a particular individual is involved in criminal conduct may objectively exist when the circumstances demonstrate that an individual associates with someone who has committed an offense and is also involved with the other person in the criminal activity," but added that, "in other circumstances, there must be factors beyond the mere association of the defendant with another person to support a suspicion the defendant is reasonably connected with the illegal activity."

These arguments and authorities highlight what this court has long known: every "reasonable suspicion" case must be decided on its own facts, *State v. Ruggles*, 238 Or App 86, 92, 242 P3d 643 (2010), *rev den*, 349 Or 601 (2011), and attempting to fact-match with existing cases can be a fool's errand, *State v. Senn*, 145 Or App 538, 545, 930 P2d 874 (1996). With those precepts in mind, we conclude that Salang did not have reasonable suspicion that defendant was involved in criminal activity at the time he was stopped. The only fact cited by Salang that relates to defendant himself, as opposed to the SUV or Watts, is his nervous, fidgety demeanor. But even if recent methamphetamine use could in some circumstances be an indicator of present methamphetamine possession, defendant's demeanor, although consistent with methamphetamine use, could "be caused by any number of things," *Frias*, 229 Or at 65—for example, with being questioned by a police officer while occupying a vehicle driven by a wanted felon. And as for Watts and the extent to which being in his proximity might indicate ongoing criminal

activity by defendant, it is significant that the only criminal activity that Salang *knew* Watts was engaged in was being in violation of his parole. He apparently had heard second-hand information that Watts was suspected of methamphetamine distribution. The information about the parking-lot drug transaction was something that Salang heard from Davis who heard it from a third officer who was not even certain about what he had seen. The information about the SUV was similarly indirect and speculative. We conclude that, under the totality of the circumstances, any suspicion that defendant was currently involved in criminal activity at the time and place where he was detained was not objectively reasonable.

We reach a similar conclusion with respect to the state's officer safety argument. To justify a stop based on officer safety concerns, the state must establish that the officer has "a reasonable suspicion, based upon specific and articulable facts, that the citizen [may] pose an immediate threat of serious physical injury to the officer[.]" *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). Again, we focus on the totality of the circumstances. *Zumbrum*, 221 Or App at 366. There may be a legitimate dispute over whether defendant presented a threat of immediate serious physical injury to Salang at the time when defendant asked if he was free to leave, and if that were the only relevant consideration, we would not "uncharitably second-guess" the officer's "life-or-death" decision. *Bates*, 304 Or at 524. However, once backup officers arrived and Watts was arrested—both of which events occurred before defendant disobeyed Salang's order to stop reaching for his pocket knife, the earliest time at which reasonable suspicion arose—all danger had dissipated. It was shortly after 8:00 a.m., in the parking lot of a K-Mart, with at least three armed officers present. Allowing defendant to leave the scene would have presented no immediate threat.

Reversed and remanded.