STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT MERLE HEATER,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR100587; A151253

328 P3d 714

Carroll J. Tichenor, Judge.

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.*

GARRETT, J.

---

* Garrett, J., *vice* Edmonds, S. J.

## GARRETT, J.

Defendant was convicted of one count of unlawful possession of methamphetamine, ORS 475.894. Before trial, defendant moved to suppress evidence obtained from a warrantless search of the car he was driving. After the trial court denied defendant's motion, defendant entered a conditional guilty plea, reserving his right to appeal the trial court's ruling on his motion to suppress. For the reasons that follow, we conclude that the trial court erred in denying defendant's motion to suppress. We reverse and remand.

## BACKGROUND

On the morning of October 10, 2010, defendant was visiting his grandmother at an assisted living facility in McMinnville. Defendant was returning home to Vancouver, Washington, after an overnight trip to the Oregon Coast. Police received a report from an unidentified caller of a disturbance at the facility. Officers High and Frick were dispatched to the scene with information of a possible domestic disturbance involving defendant and a woman, Lewis. According to the caller, Lewis appeared to be under the influence of drugs. The dispatcher also reported a description of a car parked at the scene that possibly belonged to defendant.

High observed a car matching the dispatcher's description parked in front of one of the residence units. He knocked on the front door of the unit, and defendant answered and came outside voluntarily. Frick approached Lewis, who was also outside, several hundred yards away.

In response to questions from High, defendant said that he and Lewis were visiting defendant's grandmother. Defendant also said that he and Lewis had had an argument about money but not a physical confrontation. Defendant exhibited physical characteristics—specifically, erratic speech, erratic movements, and an overall demeanor—that suggested prolonged substance abuse.[1]

---

[1] High also testified, however, that defendant did not appear to be under the influence of methamphetamine at the time of the encounter, and the state does not argue on appeal that police could have inferred that defendant was under the influence of drugs at that time.

High asked defendant whether he had any illegal drugs in his possession. Defendant replied that he did not. High then asked for consent to search defendant's car, and defendant consented. High told defendant that defendant's consent could be revoked at any time. During his search, High found baggies containing what he suspected was (and was later confirmed to be) methamphetamine. When he told defendant that he had found the baggies, defendant revoked his consent, and High stopped the search. High told defendant that he would likely seize the vehicle and seek a search warrant. Defendant again consented to a search, including searches of individual bags and backpacks in the car, during which High discovered additional illegal drugs and drug paraphernalia. Defendant was arrested and placed in the back of the officer's car.

Defendant was charged with one count of unlawful possession of methamphetamine, ORS 475.894. He filed a motion to suppress the evidence obtained during High's search, arguing that the state failed to prove that the search was justified by an exception to the state and federal warrant requirements.[2] Following the motion hearing, the trial court issued a letter opinion denying defendant's motion to suppress and concluding that the evidence was obtained during a lawful consent search. Defendant entered a conditional guilty plea to one count of possession of methamphetamine and reserved his right to appeal the trial court's denial of his motion to suppress.

## DISCUSSION

We review a denial of a motion to suppress for errors of law. We are bound by the trial court's findings of historical fact as long as there is constitutionally sufficient evidence in the record to support those findings. *State v. Caprar,* 214 Or App 434, 439, 166 P3d 567 (2007), *rev den*, 345 Or 317 (2008).

We begin by clarifying what is not at issue on appeal. Defendant does not challenge the legality of High's initial

___
[2] Because we resolve this case on state law grounds, we need not reach defendant's federal constitutional claim. *See State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (court considers all questions of state law before reaching federal constitutional claims).

stop to investigate the alleged domestic disturbance. For its part, the state does not dispute either that defendant was "stopped" at that time, or that High's questioning of defendant about illegal drugs also constituted a stop. Both parties agree that the issue on appeal is whether High unlawfully extended the initial, lawful stop in order to investigate whether defendant possessed drugs. Defendant argues that High lacked reasonable suspicion to extend the stop in order to launch an investigation into whether defendant possessed illegal drugs. The state argues that High had reasonable suspicion of drug possession but concedes that, if High did not, then the stop was unlawfully extended and the challenged evidence should be suppressed.[3]

A police officer's stop of a person is supported by reasonable suspicion when (1) the officer has a subjective belief that the person has committed or is about to commit a crime, and (2) that belief is objectively reasonable in light of the totality of the circumstances at the time of the stop. ORS 131.605(6);[4] *State v. Maciel*, 254 Or App 530, 535, 295 P3d 145 (2013) (citing *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997)); *State v. Espinoza-Barragan*, 253 Or App 743, 747, 293 P3d 1072 (2012). For an officer's suspicion to be objectively reasonable, the officer must be able to "point to specific and articulable facts" that justify the officer's suspicion. *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993). An officer's experience is "relevant to what inferences the officer may draw from the circumstances. But, an officer's experience cannot form the entire basis for reasonable suspicion." *State v. Martin*, 260 Or App 461, 470, 317 P3d 408 (2014) (internal citations omitted); *see also State v. Alvarado*, 257 Or

---

[3] The state agrees that, if there was no reasonable suspicion to extend the stop, our analysis of the admissibility of the challenged evidence is controlled by *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and that, under *Hall*, the evidence should be suppressed. *See State v. Huffman*, 258 Or App 195, 198, 308 P3d 288 (2013) ("The Supreme Court recently vacated its *Hemenway* decision. *State v. Hemenway*, 353 Or 498, 302 P3d 413 (2013). As a result, the *Hall* methodology applies."). Nevertheless, the state advances a *"Hemenway*-like" analysis for the explicit purpose of preserving that argument for possible Supreme Court review. Because the state acknowledges that *Hall* controls, we do not address the state's *"Hemenway*-like" analysis.

[4] ORS 131.605(6) defines "reasonably suspects" as when "a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts * * *."

App 612, 631, 307 P3d 540 (2013) ("An officer's training and experience are relevant to, and may help explain why, a particular circumstance is suspicious. We have also recognized, however, that the phrase 'training and experience' is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity.") (internal citations, punctuation, and quotations omitted)). As the Oregon Supreme Court explained in *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977),

> "[E]xperienced police develop what amounts to an intuitive sixth sense about matters of this kind. * * *. Such instinct and experience cannot, however, form the entire basis for 'reasonable suspicion,' because no practical control can be exercised over police by courts if, in the absence of any very remarkable activity, the officer's instinct and experience may be used as the sole reason to justify infringement upon the personal liberty sought to be protected * * *."

An officer's reasonable suspicion must be "particularized to the individual based on the individual's own conduct." *State v. Miglavs*, 337 Or 1, 12, 90 P3d 607 (2004) (citing *State v. Stanley*, 325 Or 239, 245-46, 935 P2d 1202 (1997)).

We have observed that reasonable suspicion, as a legal concept, is lacking in "bright lines"; as such, "every reasonable suspicion case must be decided on its own facts, and attempting to fact-match with existing cases can be a fool's errand." *State v. Holdorf*, 250 Or App 509, 514, 280 P3d 404 (2012), *rev allowed*, 353 Or 208 (2013) (internal quotations and citations omitted). "[A] set of facts will not always create a reasonable suspicion just because those facts are consistent with, but do not necessarily suggest, a crime [has been] committed." *Alvarado*, 257 Or App at 629.

An extension of an otherwise lawful stop to investigate matters unrelated to the initial basis for the stop must be justified anew by reasonable suspicion of criminal activity in order to be lawful under ORS 131.615 and Article I, section 9, of the Oregon Constitution.[5] *State v. Frias*, 229 Or

---

[5] Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

App 60, 63-64, 210 P3d 914 (2009); *see also State v. Ehret (A111248)*, 184 Or App 1, 10, 55 P3d 512 (2002) (noting that an officer "did not have a reasonable suspicion of criminal activity that would have justified the continuation of the detention of defendant").

There are two situations in which questioning unrelated to the initial basis for a stop can constitute an unlawful extension of the stop. First, an officer might conclude a lawful stop (for example, by telling a person that he or she is free to leave) and then initiate a second stop by inquiring about other matters without reasonable suspicion. *State v. Huggett*, 228 Or App 569, 574, 209 P3d 385 (2009). In the second situation, an officer might detain a person beyond the time reasonably required to investigate the initial basis for the stop, without telling the person expressly or by implication that he or she is free to leave and without the requisite reasonable suspicion to support a *new* basis for a stop. *Id.*; *see also State v. Rodgers*, 219 Or App 366, 371, 182 P3d 209 (2008), *aff'd sub nom State v. Rodger/Kirkeby*, 347 Or 610, 227 P3d 695 (2010); *State v. Broughton*, 221 Or App 580, 587-88, 193 P3d 978 (2008).

This case involves the second situation. High initially stopped defendant based on suspicion of a domestic disturbance. High testified that during the course of a domestic disturbance stop, he and his partner typically separate the parties involved, question each party individually, and then communicate with each other over the radio to determine the appropriate next steps. In this instance, however, after asking defendant about the disturbance, High began questioning defendant about illegal drug possession. He did not contact Frick to discuss the alleged domestic disturbance until after the car had been searched and defendant had been arrested. Neither defendant nor Lewis was arrested or charged in connection with the initial report of a supposed domestic disturbance.

However reasonable the initial stop may have been (and that is not at issue on appeal), High was required to have a separate reasonable suspicion of defendant's drug possession before extending the stop to investigate that issue. The state argues that the following facts support a reasonable

suspicion that defendant was in possession of methamphetamine: (1) defendant exhibited physical characteristics suggestive of prolonged drug use; (2) defendant was associated with Lewis, who was suspected of being under the influence of drugs at the time of the stop; and (3) defendant had driven from Vancouver, Washington, to the Oregon Coast and had spent the night. We conclude, however, that those facts were insufficient, both individually and when viewed together in the totality of the circumstances, to establish the reasonable suspicion required to extend the initial, lawful stop.

We begin with the state's first assertion—that High's suspicion of defendant's drug possession was reasonable based on his observations of defendant and his training and experience observing long-term drug users.

Even assuming that High's observations support a reasonable suspicion that defendant had used drugs in the past, those observations did not create a permissible basis to infer that defendant possessed illegal drugs at the time of the stop. *See Ehret,* 184 Or App at 9 ("The fact that defendant had past involvement with drugs does not give rise to a reasonable suspicion that he possessed drugs at the time of the * * * stop * * *."); *Frias,* 229 Or App at 65 ("Simply put, whatever the inference that could be reasonably drawn about defendant's *past* drug use, there was no evidence of a current or imminent crime," where an officer observed that the man had dark circles under his eyes, was evasive, and was awaiting sentencing on a previous drug possession charge (emphasis in original)); *State v. Kentopp,* 251 Or App 527, 533, 284 P3d 564 (2012) (reasoning that an officer's observation that defendant's gray, rotting teeth were indicative of past methamphetamine use was not sufficient to support reasonable suspicion of current drug possession).

Our holding in *State v. Holcomb,* 202 Or App 73, 121 P3d 13 (2005), is illustrative. In *Holcomb,* a police officer saw a woman walking and dancing along the side of a highway. *Id.* at 75. The officer was concerned that she could be "mentally unstable" and might drift into the road. *Id.* Upon approaching her, the officer saw track marks on the woman's arms and noticed that she looked "dirty and unkempt * * * like she'd been up all night." *Id.* Although the officer

concluded that the woman was not under the influence of drugs as he spoke to her, he asked for her identification for a warrant check and determined that she was on probation for a drug offense. *Id.* at 75-76. The officer asked the woman if she had drugs on her person, and she produced three syringes and eventually methamphetamine. *Id.* at 76. The woman appealed her conviction of possession of methamphetamine and argued that the officer did not have reasonable suspicion that she possessed drugs at the time she was stopped. *Id.* We agreed. In doing so, we rejected the state's argument that "a person's recent drug use is sufficient, without more, to establish reasonable suspicion of present drug possession." *Id.* at 77-78 (explaining that the state's argument "would effectively sanction nonparticularized, status-based stops of habitual drug users. The law does not go so far.").

In this case, High cited defendant's "overall demeanor" and "conversation style" as being "consistent with * * * prolonged drug use." He described defendant's speech and movements as "erratic" and said that defendant was not communicating in full sentences. He also testified, however, that defendant did not give signs of being on drugs at the time of the stop. However sound High's suspicion may have been as to defendant's drug history, it was constitutionally inadequate to establish reasonable suspicion that defendant possessed illegal drugs at the time of the stop.

The state's second assertion relies on defendant's association with Lewis, his girlfriend, who, according to the unidentified informant, appeared to be on drugs at the time. We have squarely rejected the proposition that a person's association with an individual involved with criminal drug activity is a basis for reasonable suspicion of that person's own involvement in criminal drug activity. *State v. Bertsch*, 251 Or App 128, 134, 284 P3d 502 (2012) (holding that it was "not reasonable to conclude that a person [was] involved in drug crimes because he or she [was] in the company of a known drug user or dealer," and concluding that police did not have reasonable suspicion that defendant possessed drugs merely because defendant was visiting an apartment building suspected of drug activity, defendant left the apartment shortly after arriving, and defendant was accompanied

by a person known to associate with drug dealers and drug users); *see also State v. Rutledge,* 243 Or App 603, 610, 260 P3d 532 (2011) (facts were insufficient to justify reasonable suspicion where the defendant "had just left a motel that the police believed was involved in drug activity, [and] was in a car with a person suspected of drug activity"); *State v. Zumbrum,* 221 Or App 362, 364-70, 189 P3d 1235 (2008) (facts that defendant was present in the same apartment as a person who participated in "mid- to upper-level drug deals," that the apartment was located in a "high-crime area," and that the apartment was the subject of tips about illegal drug activity did not "tell [the court] whether defendant * * * was involved in criminal activity").

Based on the foregoing, defendant's association with Lewis was a particularly weak basis for suspecting defendant of possessing drugs. Here, High had merely been informed by his dispatch officer that, according to an unidentified informant caller, Lewis appeared to be under the influence of drugs. The record contains no indication that High personally observed or interacted with Lewis, or learned anything about Frick's observations of Lewis, until defendant had already been questioned about drugs, arrested, and placed in custody. Nor did High testify that he personally believed Lewis was on drugs at the time of the stop.[6] Under those circumstances, defendant's association with Lewis could not reasonably contribute to a suspicion that defendant possessed drugs at the time of the stop.

The state's third assertion is that defendant's overnight trip to the coast supported High's reasonable suspicion that defendant was in possession of illegal drugs. Traveling from Washington to the Oregon coast is not an inherently suspicious activity, and nothing in the record demonstrates that defendant's trip was suspicious. In *State v. Juarez-Godinez,* 135 Or App 591, 593, 900 P2d 1044 (1995), a defendant was stopped for speeding while driving from Oregon to Tacoma, Washington. The police officer testified that he was suspicious because the defendant's car smelled strongly of air freshener and contained no luggage; the defendant

---

[6] Frick did not testify at trial, nor does the record otherwise indicate any observations that Frick made of Lewis.

was wearing new clothing, gold jewelry and had "salon-styled hair"; and the defendant was "visibly nervous, turning pale, agitated, perspiring, and exhibit[ing] furtive eye movements." *Id.* at 606-07. The officer also testified that, based on his experience, Tacoma was "a frequent destination of narcotics traffickers." *Id.* at 606. We concluded that "none of those observations, either individually or collectively" justified a reasonable suspicion that the defendant was in possession of illegal drugs at the time of the stop. Like *Juarez-Godinez*, defendant in this case was traveling a considerable distance. Here, however, defendant's trip clearly had a purpose that was not indicative of any criminal activity—to visit the coast and then to visit his grandmother at her assisted living community. The record indicates that High understood from the beginning of the encounter that defendant was visiting his grandmother. Further, unlike in *Juarez-Godinez*, High did *not* testify that the trip itself was suspicious. Rather, he apparently regarded the trip as suspicious only in conjunction with defendant's physical signs of prolonged drug use and his association with Lewis.

In short, the facts relied on by the state are insufficient, individually, to support reasonable suspicion that defendant was in possession of illegal drugs. They are also insufficient collectively. The state primarily relies on two circumstances—that defendant showed symptoms of long-term drug use and that he was in the company of another potential drug user—that this court has repeatedly rejected as sound bases for reasonable suspicion. The third circumstance—that defendant was on an overnight trip—is, by the state's own reasoning, not suspicious in and of itself. Rather, the trip only became potentially suspicious in light of other circumstances that we have already rejected as not particularized to defendant's conduct at the time of the stop.

As noted above, the state concedes that, if High lacked reasonable suspicion to extend the stop to investigate possible drug possession, the challenged evidence should have been suppressed under *Hall*. We agree. Accordingly, the trial court erred in denying the motion to suppress.

Reversed and remanded.