Submitted on remand February 24, reversed and remanded June 3, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT MERLE HEATER,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR100587; A151253

351 P3d 776

Peter Gartlan, Chief Defender, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, filed the opening brief for appellant. Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, filed the supplemental brief.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Senior Assistant Attorney General, filed the answering brief for respondent. Ellen F. Rosenblum, Attorney General, Anna M. Joyce,

Solicitor General, and Rolf C. Moan, Senior Assistant Attorney General, filed the supplemental brief.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

This case is before us on remand from the Supreme Court, which vacated our prior decision, *State v. Heater*, 263 Or App 298, 328 P3d 714, *vac'd and rem'd*, 356 Or 574, 342 P3d 87 (2014) (*Heater I*), and ordered reconsideration following a trio of recent decisions: *State v. Unger*, 356 Or 59, 333 P3d 1009 (2014); *State v. Musser*, 356 Or 148, 335 P3d 814 (2014); and *State v. Lorenzo*, 356 Or 134, 335 P3d 821 (2014). In *Heater I*, we reversed and remanded defendant's conviction for possession of methamphetamine, ORS 475.894, because the trial court erred in denying defendant's motion to suppress evidence that derived from an unlawful seizure. After our decision, the Supreme Court issued *Unger*, *Musser*, and *Lorenzo*, which revised the analytical framework for deciding whether a person's voluntary consent to a search derived from a preceding police illegality. The state contends that, under that new framework, we should conclude that defendant's consent to being searched was not the product of police "exploitation" of the unlawful seizure. Defendant counters that the state is, in effect, urging a basis for affirmance that was never argued below and that we should not consider for the first time on appeal. As explained below, we agree with defendant that, if the state had made the argument at trial that it makes now, the record might have developed differently in a manner that could affect the disposition of the case. Accordingly, we adhere to our decision in *Heater I* reversing the judgment and remanding for a new trial.

We recite the facts and pertinent procedural history from *Heater I*:

"On the morning of October 10, 2010, defendant was visiting his grandmother at an assisted living facility in McMinnville. Defendant was returning home to Vancouver, Washington, after an overnight trip to the Oregon Coast. Police received a report from an unidentified caller of a disturbance at the facility. Officers High and Frick were dispatched to the scene with information of a possible domestic disturbance involving defendant and a woman, Lewis. According to the caller, Lewis appeared to be under the influence of drugs. The dispatcher also reported a description of a car parked at the scene that possibly belonged to defendant.

"High observed a car matching the dispatcher's description parked in front of one of the residence units. He knocked on the front door of the unit, and defendant answered and came outside voluntarily. Frick approached Lewis, who was also outside, several hundred yards away.

"In response to questions from High, defendant said that he and Lewis were visiting defendant's grandmother. Defendant also said that he and Lewis had had an argument about money but not a physical confrontation. Defendant exhibited physical characteristics—specifically, erratic speech, erratic movements, and an overall demeanor—that suggested prolonged substance abuse.

"High asked defendant whether he had any illegal drugs in his possession. Defendant replied that he did not. High then asked for consent to search defendant's car, and defendant consented. High told defendant that defendant's consent could be revoked at any time. During his search, High found baggies containing what he suspected was (and was later confirmed to be) methamphetamine. When he told defendant that he had found the baggies, defendant revoked his consent, and High stopped the search. High told defendant that he would likely seize the vehicle and seek a search warrant. Defendant again consented to a search, including searches of individual bags and backpacks in the car, during which High discovered additional illegal drugs and drug paraphernalia. Defendant was arrested and placed in the back of the officer's car.

"Defendant was charged with one count of unlawful possession of methamphetamine, ORS 475.894. He filed a motion to suppress the evidence obtained during High's search, arguing that the state failed to prove that the search was justified by an exception to the state and federal warrant requirements. Following the motion hearing, the trial court issued a letter opinion denying defendant's motion to suppress and concluding that the evidence was obtained during a lawful consent search. Defendant entered a conditional guilty plea to one count of possession of methamphetamine and reserved his right to appeal the trial court's denial of his motion to suppress."

263 Or App at 300-01 (footnotes omitted).

In *Heater I*, we began by clarifying what was not at issue on appeal. Defendant did not "challenge the legality

of High's initial stop to investigate the alleged domestic disturbance," and the state did not dispute "that defendant was 'stopped' at that time, or that High's questioning of defendant about illegal drugs also constituted a stop." *Id.* at 301-02. Rather, both defendant and the state agreed that the issue on appeal was whether police "unlawfully extended the initial, lawful stop in order to investigate whether defendant possessed drugs." *Id.* at 302. Defendant argued that High "lacked reasonable suspicion to extend the stop in order to launch an investigation into whether defendant possessed illegal drugs." *Id.* In turn, the state argued (at trial and on appeal) that High had reasonable suspicion of defendant's drug possession, and that there was no police misconduct preceding defendant's consent to search. The state conceded that our analysis of the admissibility of the challenged evidence was controlled by *State v. Hall*, 339 Or 7, 115 P3d 908 (2005), and that, under *Hall*, if we concluded that High lacked reasonable suspicion, then the challenged evidence should be suppressed. *Id.* at n 3. Nevertheless, the state "advance[d] a '*Hemenway*-like' analysis for the explicit purpose of preserving that argument for possible Supreme Court review." *Id.* In doing so, the state contended that, should the Supreme Court modify the *Hall* analysis in line with the arguments it presented, defendant's consent to search was valid even if it was obtained during an unlawful detention because nothing in the circumstances surrounding his voluntary consent suggested that it was significantly affected by the unlawful detention. Ultimately, we concluded that the evidence was "insufficient, both individually and when viewed together in the totality of the circumstances, to establish the reasonable suspicion required to extend the initial, lawful stop" and that the trial court had erred in denying defendant's motion to suppress. *Id.* at 305.

Subsequently, the Supreme Court issued *Unger, Musser*, and *Lorenzo*, which modified *Hall*'s two-step exploitation analysis to determine whether evidence obtained pursuant to a defendant's voluntary consent must nonetheless be suppressed due to police exploitation of a preceding police illegality. *Unger*, 356 Or at 74-75. Specifically, those cases "disavow[ed] the minimal factual nexus test described in *Hall* * * * which considered only the temporal proximity

between the unlawful police conduct and the consent and mitigating or intervening circumstances." *Id.* at 93. Instead, the court explained in *Unger* that,

> "when a defendant has established that an illegal stop or an illegal search occurred and challenges the validity of his or her subsequent consent to a search, the state bears the burden of demonstrating that (1) the consent was voluntary; and (2) the voluntary consent was not the product of police exploitation of the illegal stop or search."

356 Or at 74-75. The court explained that, in addition to temporal proximity and mitigating circumstances, "courts must consider the totality of the circumstances *** including the nature of the illegal conduct and its purpose and flagrancy, without unduly emphasizing any single consideration." *Id.* at 93.

On remand, the state, applying the *Unger* framework, now argues that the officer's request for defendant's consent to search "was prompted by information obtained during [the initial] lawful seizure" related to the investigation of a domestic dispute and that the unlawful police conduct—the illegal seizure of defendant—did not "significantly affect[] defendant's decision to consent." Thus, the state urges that the trial court correctly denied the motion to suppress.

As defendant points out, however, the state did not argue at the suppression hearing that defendant's consent to search was not a product of exploitation. Rather, the state took the position that no police illegality occurred at all—that is, the seizure was lawful because it was based on officers' reasonable suspicion that defendant possessed drugs. The trial court, therefore, never considered whether any police illegality infected the voluntariness of defendant's consent. Because the state's "no exploitation" argument was made for the first time in *Heater I*, the state urges it as an alternative basis for affirmance under the "right for the wrong reason" principle. *Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659, 20 P3d 180 (2001). Under that rule, we may consider an alternative basis for affirmance on appeal if (1) the evidentiary record is sufficient to support it, (2) the trial court's ruling is consistent with the view of the evidence

under the alternative basis, and (3) the record is materially the same as the one that would have developed had the prevailing party raised the alternative basis below. *State v. Holiday*, 258 Or App 601, 609-10, 310 P3d 1149 (2013).

Here, the state argues that "nothing about [defendant's] unlawful seizure significantly affected defendant's decision to consent." The state relies on evidence in the record that defendant's encounter with police was "low key," the officer did not "draw [his] weapon," no patrol car lights were activated, and that "nothing suggests that [police] posed * * * questions in anything other than a conversational tone." The critical question, however, is whether the record might have developed differently if the state had made the argument below that it makes now. Clearly it could have. If the state had argued that, even assuming that police acted unlawfully, defendant's consent was still voluntary, then one can expect that defendant would have sought to adduce evidence to establish exploitation. Defendant had no reason to do so in light of the arguments that the state actually made below. For example, the parties could have presented disparate views of the "nature, extent, and severity of [any] police misconduct," "the purpose and flagrancy of that misconduct," *Unger*, 356 Or at 83, or "objective circumstances, including verbal and nonverbal conduct, that may indicate whether police took advantage of the prior illegality to obtain defendant's consent." *Musser*, 356 Or at 158.

For those reasons, we conclude that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.