Argued and submitted October 31, 2011, reversed and remanded July 25, 2012

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DEBRA MARIE KOLB,
*Defendant-Appellant.*

Douglas County Circuit Court
07CR1807FE; A145078

283 P3d 423

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were

John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals her conviction for possession of a controlled substance (methamphetamine), ORS 475.894, assigning error to the denial of her motion to suppress evidence of that offense. She contends that that evidence was obtained as the result of an unlawful seizure of her person following a traffic stop of a car in which she was a passenger. As explained below, we conclude that defendant was unlawfully seized in that, as of the time of the stop, the totality of the circumstances did not support reasonable suspicion that defendant possessed methamphetamine. Accordingly, we reverse and remand.

The trial court rendered extensive and detailed findings regarding the circumstances material to the suppression motion, and we recite the facts consistently with those findings. On August 17, 2007, Corporal Ruble of the Douglas County Sheriff's Office was on patrol in Riddle at 1:45 a.m. He saw a car in which defendant was a passenger cross over the center line three times and, consequently, initiated a traffic stop for failure to drive within a lane. ORS 811.370(1)(a). Ruble approached the car and asked for both the driver's license and registration and proof of insurance and for defendant's driver's license. As he was obtaining those documents, Ruble, who was a certified drug evaluator, noticed that defendant was exhibiting various physical manifestations consistent with recent drug use. Specifically, defendant was "very—extremely fidgety," her movements were "very fast and random," her pupils were "larger than normal," and she was "very talkative." Based on those observations, coupled with his training and experience, Ruble believed that defendant was "obviously under the influence of a [central nervous system] stimulant."

After obtaining defendant's and the driver's licenses and other documents, Ruble returned to his patrol car, where he contacted dispatch. The ensuing records check indicated no "wants or warrants." Ruble then returned to the car, returned the licenses and other documents, and asked the driver to step out of the car. He told the driver that defendant was under the influence of a controlled substance and asked if there were drugs or weapons in the car. After

the driver responded in the negative, Ruble obtained the driver's consent to search the car. During the ensuing search, Ruble found a duffle bag, which defendant identified as hers. Ruble then asked for, and obtained, defendant's consent to search the bag. Inside that bag was a small tin can containing small bags that contained a "white crystal-like substance," which proved to be methamphetamine. After Ruble advised defendant of her *Miranda* rights, defendant made inculpatory statements pertaining to her possession of the methamphetamine.

Defendant was charged with possession of methamphetamine. She moved to suppress the contents of the duffle bag and her inculpatory statements. In support of that motion, defendant argued that (1) Ruble stopped defendant by obtaining her driver's license; (2) that stop was unlawful because, as of the time that he obtained her license, Ruble lacked reasonable suspicion that defendant was engaged in criminal conduct (specifically, possession of a controlled substance); and (3) defendant's consent to the search of the duffle bag was the unattenuated product of that unlawful stop. With respect to the asserted lack of reasonable suspicion, defendant argued, alternatively if imprecisely, that (a) Ruble's observations that led him to believe that she was under the influence of a controlled substance occurred *after* he stopped her and, therefore, could not justify the stop; and (b) in all events, even if defendant were under the influence of a controlled substance, that, without more, was insufficient to support objectively reasonable suspicion that she "was in *possession* of illegal drugs at the time of the stop." (Emphasis in original.)

The state remonstrated that Ruble's observations of defendant's manifestations of recent drug use antedated any stop and supported reasonable suspicion of unlawful possession of a controlled substance. The state further, and alternatively, asserted that defendant's consent was not the result of any exploitation of any stop (lawful or otherwise) because Ruble was, in all events, going to ask for defendant's consent because of the observations he made of her.

Ruble testified at the ensuing suppression hearing. One aspect of his testimony is especially pertinent to

the trial court's disposition and our review. After Ruble explained why he believed, based on his observations, that defendant was under the influence of a controlled substance, the following colloquy occurred:

"[PROSECUTOR]: * * * [W]hat is the correlation between her being under the influence and her being in violation of a drug law?

"[RUBLE]: People who usually are under the influence had to obviously take the methamphetamine. It's very common that they have pipes, needles, syringes, paraphernalia with them when they are under the influence.

"[PROSECUTOR]: And * * * how have you discovered that?

"[RUBLE]: Through my training and experience."

In opposing suppression, the state's sole theory pertaining to possession of a controlled substance was one of *present* possession—that is, that, given Ruble's testimony relating to possession of paraphernalia, Ruble had reasonable suspicion, as of the time that he obtained and ran the records check on defendant's driver's license, that defendant possessed methamphetamine in the form of residue on implements or paraphernalia in her possession. The state did not advance (at least in any cogent sense) and rely on a theory of *immediate past possession*—that is, that, given that defendant was under the influence of a controlled substance, that circumstance supported reasonable suspicion that defendant had just committed the crime of possession of methamphetamine.[1]

The trial court denied suppression, reasoning that Ruble, based on his extensive drug recognition experience and expertise, could reasonably determine that defendant

---

[1] Nor did the state argue that, by virtue of being under the influence of a controlled substance, defendant presently "possessed" drugs within her body—an argument that we have rejected. *See State v. Daline*, 175 Or App 625, 30 P3d 426 (2001).

was under the influence of a controlled substance. Further, again relying on Ruble's testimony, the court reasoned:

> "Officer Ruble, who has extensive experience in drug investigations * * * indicated that individuals on methamphetamine have to ingest the substance and often have on them pipes, syringes and needles.

> "Here the Defendant was under the influence currently of a [central nervous system] stimulant and it's reasonable to conclude that the Defendant was in possession of the instrumentalities used to ingest the substance itself *which contained evidence of the crime itself, methamphetamine, such as the residue.*

> "* * * * *

> "And it is a fair inference from [Ruble's] testimony that she would have either—very commonly he indicated that individuals in that situation had on them, and I think it's a fair reading and understanding of his testimony, it's very common for people under the influence of a controlled substance, methamphetamine, to have the items used to ingest that, including needles, syringes or pipes, *which could contain the controlled substance itself.*

> "* * * * *

> "The Court finds that these are common sense conclusions from the officer's testimony and that he believed in the situation that based upon his training and experience and his observations at the time that an individual under the influence of a [central nervous system] stimulant *would have substance with them, including or as part of the delivery system, whether it's a syringe, needle or pipe.*"

(Emphases added.) Thus, and consistently with the state's advocacy of a "present possession" theory of reasonable suspicion, the trial court's *sole* rationale for determining that Ruble's stop of defendant was supported by reasonable suspicion was that a person "under the influence of a [central nervous system] stimulant would have the substance with them, including or as part of the delivery system, whether it's a syringe, needle or pipe."[2] Defendant was subsequently convicted, following a jury trial, of possession of methamphetamine.

---

[2] The trial court expressly found that Ruble observed defendant's manifestations of drug use "while he was * * * obtaining the license of the driver and the passenger" and before he returned to his patrol car to run that information.

On appeal, as before the trial court, defendant advances arguments pertaining to the timing and alleged unlawfulness of the stop and to the relationship between the purportedly unlawful stop and her consent to the search of the duffle bag that yielded the methamphetamine and other inculpatory evidence. However, her current arguments vary from her former in some respects. For example, although defendant argued to the trial court that she was stopped when Ruble "obtained" and "retained" her license, on appeal she asserts that "defendant was stopped when Ruble *asked for her driver's license,* or, in the alternative, when he obtained the license and conducted a records check." (Emphasis added.) Proceeding from that first, alternative ("asked for") proposition—which was never raised before the trial court—defendant contends that, as of the time Ruble requested her license, he had not yet observed her manifestations of drug use, and, thus, even if those observations could otherwise support reasonable suspicion (which she disputes), they occurred *after* the "stop." Defendant also contends—reprising her position before the trial court—that, even if the stop did not occur until after Ruble obtained her identification for use in the records check, Ruble's antecedent observations were insufficient to support reasonable suspicion of possession of a controlled substance.

The state, for its part, also varies—or, more precisely, supplements—its contentions before the trial court. In addition to reiterating its position that Ruble had reasonable suspicion with respect to *present* possession of a controlled substance (in the form of methamphetamine residue on paraphernalia likely in defendant's possession), the state now alternatively posits that, at least, there was reasonable suspicion that defendant *"recently unlawfully possessed* a controlled substance * * * just as the presence of someone else's blood on a person's hands might support a reasonable suspicion that the person was involved in an unlawful, violent act." (Emphasis added.) The state does not explicitly cast that "recent past possession" rationale as an alternative basis for affirmance.

We begin by addressing two preliminary matters whose resolution will clarify and simplify the essential question properly presented for our review. Both of

those matters are the products of the parties' ostensible supplementation of their contentions (or, at least, their coherently developed contentions) before the trial court.

The first is defendant's appellate assertion that she was stopped merely by Ruble's *request* for her driver's license—as opposed to the stop occurring (as defendant argued to the trial court) when Ruble "obtained" and retained her license. Even assuming that the former contention could be deemed to have been somehow ambiently preserved for our review, it fails. *See State v. Jones*, 245 Or App 186, 191, 263 P3d 344 (2011) ("[A]lthough an officer effects a stop by asking a person for identification and then contacting dispatch to 'run' the information, or by asking and retaining identification for investigatory purposes, merely asking for identification, in the absence of other circumstances manifesting a show of authority, does not amount to a stop." (Citations omitted.)); *State v. Harper*, 197 Or App 221, 235, 105 P3d 883 (2005) ("Although a request for identification does not, by itself, transform an encounter into a stop, an officer's retention of a person's identification for investigatory purposes during questioning restrains the person from leaving and, therefore, constitutes a stop." (Citation omitted.)). Here, Ruble did not engage in any show of authority materially distinguishable from the conduct of the officers in *Jones* and *Harper*. Accordingly, and consistently with our precedents, the stop in this case occurred when Ruble obtained and retained defendant's license to run the records check.

The second "deck-clearing" matter relates to the state's alternative "recent past possession" theory of reasonable suspicion. As noted, the state does not expressly denominate that contention as an alternative basis for affirmance—but that is, functionally, precisely what it is. That is, the state proffers that contention—which was never cogently presented or developed before the trial court—as an alternative ground for affirming the trial court's denial of suppression, in the event that we reject the "present (methamphetamine residue on retained paraphernalia) possession" rationale, which was the trial court's sole basis for determining that the stop was supported by reasonable suspicion.

We decline, as a prudential matter, to address and decide that proffered alternative basis for affirmance. As we have noted elsewhere, "[u]nder *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), our consideration of an alternative basis for affirmance is a matter of prudential discretion and not compulsion." *Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 56, 245 P3d 688 (2010).

We so decline in this instance because, frankly, the state's belated and still-cursory contention may well implicate an ostensible unresolved tension between and among decisions of this court bearing on the proper relationship between evidence that a person is presently under the influence of a controlled substance and either probable cause or reasonable suspicion of possession of a controlled substance. *Compare, e.g., State v. Blount*, 143 Or App 582, 589, 924 P2d 860, *rev den*, 324 Or 488 (1996) (highly experienced officer's observations that the defendant appeared to be under the influence of methamphetamine, in combination with the defendant's location and lack of alternative explanation that "someone other than [the] defendant had introduced the methamphetamine into [the] defendant's body," established probable cause to arrest for possession of methamphetamine; as matter of objectively reasonable belief, officer was entitled to infer that the defendant had probably "possessed methamphetamine before introducing it into his body"),[3] *with State v. Morton*, 151 Or App 734, 739, 951 P2d 179 (1997), *rev den*, 327 Or 521 (1998) (officer lacked reasonable suspicion that the defendant passenger had unlawfully possessed marijuana, notwithstanding the officer's observations of the defendant's appearance and behavior that were consistent with being under the influence of marijuana),[4] *and State v. Lavender*, 93 Or App 361, 363, 364, 762 P2d

---

[3] *But see Blount*, 143 Or App at 590 (De Muniz, J., dissenting) (deconstructing majority's reasoning and asserting that, properly understood, the circumstances were indistinguishable from those in *State v. Lavender*, 93 Or App 361, 762 P2d 1027 (1988)).

[4] Our holding in *Morton* may have been based on a permutation or combination of reasons, including that, "even if the evidence could give rise to a reasonable suspicion that [the defendant] was under the influence of marijuana, it is not a crime to possess less than an ounce of marijuana; it is only a violation." 151 Or App at 739 n 4.

1027 (1988) (holding, *inter alia*, that experienced officer's observations that the defendant was "under the influence of either methamphetamine or cocaine" did not, by itself, establish probable cause "to believe that [the defendant] had committed a crime"). *Accord State v. Holcomb*, 202 Or App 73, 75, 78, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 125 P3d 22 (2005) (officer lacked reasonable suspicion to stop the defendant who was not under the influence of a controlled substance but who had track marks on her arm "indicative of intravenous drug use"; explaining that "the state's position on this record, if accepted, would effectively sanction nonparticularized, status-based stops of habitual drug users"); *id.* at 78 n 2 (reserving issue of "whether, or to what extent, the assessment of reasonable suspicion would differ if the person subjected to the stop were under the influence of a controlled substance").

In short, the state's present, almost parenthetical, alternative contention implicates matters that are far from parenthetical. Even assuming that the development of the factual record before the trial court would not have been materially affected if that contention had been raised initially, *see Outdoor Media Dimensions Inc.*, 331 Or at 659-60, the fact remains that to address that contention meaningfully would require us, in the first instance—without legal record development or any real assistance from the parties—to decide difficult, nuanced, and systemically significant issues. We respectfully decline to do so.

We proceed to the crux of the dispute: At the time that Ruble obtained defendant's driver's license to run the records check, was that stop supported by reasonable suspicion that defendant *presently* possessed methamphetamine? When deconstructed, the trial court's resolution of that question rests on five interlocking premises:

(1) Defendant was under the influence of a central nervous system stimulant (*e.g.*, methamphetamine);

(2) People who are under the influence of methamphetamine commonly also possess the implements or paraphernalia of methamphetamine use;

(3) Those implements are commonly retained and reused;

(4) Because those implements are retained and reused, they will bear evidence of prior uses; and

(5) That retained evidence of prior use will include traces of methamphetamine.

The first two of those premises are based expressly on Ruble's testimony at the suppression hearing, including his recitation of his training and expertise as a certified drug recognition evaluator, his observations of defendant, and his experience in drug-related investigations. The last three of those premises are inferences derived, in turn, from Ruble's testimony and, successively, from one another. If the premises collectively are impermissibly speculative, or if any of the premises is individually insupportable, the stop was not supported by reasonable suspicion. *See generally State v. Bivins*, 191 Or App 460, 466-71, 83 P3d 379 (2004) (addressing "stacking of inferences" in context of review of denial of a motion for judgment of acquittal and concluding that "the state's evidence falls on the side of speculation, not reasonable inference").

In many of our opinions addressing the legal sufficiency of multiple, inferentially interdependent premises to support a conclusion, the metaphorical motif has been "a bridge too far." That is, in a classic "stacking of inferences" sense, the totality of the construct is too tenuous and attenuated to produce the requisite result with the requisite degree of (nonspeculative) confidence. *See, e.g.*, *Bivins*, 191 Or at 466-71. To some extent, that analysis could apply here. Although the first premise (that defendant was under the influence of a central nervous system stimulant) is solidly grounded in Ruble's drug recognition evaluation expertise, even the second premise (that persons under the influence of *methamphetamine* commonly possess implements of *that* use) partakes both of unamplified "training and experience" data[5] and of an implicit assumption, *viz.*, that defendant

---

[5] *Accord Jones*, 245 Or App at 192-94 (officer's generalized "training and experience"-based testimony as to probationers' and parolees' purportedly characteristic conduct was insufficient to demonstrate reasonable suspicion that the defendant was about to violate the terms of his post-prison supervision); *see*

was under the influence of methamphetamine, as opposed to some other central nervous system stimulant (*e.g.*, cocaine).

In all events, the third premise (that persons under the influence of methamphetamine will not only *possess* implements of methamphetamine use but will also *retain* the implements of recent use) is innately inferential. Ruble did not expressly testify as to retention and reuse; rather, such an inference can only be derived from what is implicit in his testimony and, especially, the juxtaposition of the first sentence of his pertinent response ("People who usually are under the influence had to obviously take the methamphetamine.") with the second ("It's very common that they have pipes, needles, syringes, paraphernalia with them when they are under the influence."). A reasonable person could so construe Ruble's testimony, but that construction is hardly patent.

That leaves the final two interdependent premises—*viz.*, that retained implements of recent methamphetamine use will bear evidence of prior uses and that the evidence (for purposes of reasonable suspicion of *present* unlawful possession of methamphetamine) will include detectable traces of methamphetamine. And it is at this point that the applicable motif shifts from "a bridge too far" to "a bridge never built." Nothing in Ruble's testimony (which was the only evidence proffered in the suppression hearing) substantiates the first of those propositions, much less the dispositive final premise. Nothing in that testimony refers to methamphetamine traces or residue on implements in users' possession, much less the frequency of that occurrence (if, in fact, it does occur). Thus, even if one could somehow posit—based on some sort of "common experience"—that, unless cleaned, implements and utensils often bear traces of prior use (*e.g.*, dried mud on a spade or encrusted mustard on a spreading knife), there is absolutely no basis in this record from which one can infer, without resorting to speculation,

---

*generally State v. Daniels*, 234 Or App 533, 539-43, 228 P3d 695, *rev den*, 349 Or 171 (2010) (assessing officer's "training and experience"-based averments submitted in support of a search warrant application; explaining that "[t]he phrase 'training and experience' * * * is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity").

that that generic proposition applies specifically to methamphetamine use, yielding an objectively reasonable prospect that implements of recent use will bear or contain detectable traces of the controlled substance. *That* "bridge" was never "built."

The trial court thus erred in concluding that Ruble's stop of defendant was supported by reasonable suspicion because Ruble could reasonably have concluded that defendant "was in possession of the instrumentalities used to ingest the substance itself which contained * * * methamphetamine, such as the residue." Further, defendant's consent to search the duffle bag occurred during the course of that unlawful stop, establishing the "minimum factual nexus" between the unlawful stop and the evidence (including the derivative inculpatory statements) that defendant seeks to suppress. *See State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005). Accordingly, we reverse and remand.[6]

Reversed and remanded.

---

[6] Although the state, as noted, proffered an attenuation/nonexploitation contention to the trial court in opposing the motion to suppress, it does not renew that contention on appeal.