Argued and submitted July 20, 2011, reversed and remanded
September 12, 2012

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LORETTA C. FARRAR,
*Defendant-Appellant.*

Douglas County Circuit Court
08CR1337FE; A143404

287 P3d 1124

Kenneth A. Kreuscher argued the cause for appellant. With him on the brief were Catherine A. Highet and Portland Law Collective, LLP.

Michael Salvas, Certified Law Student, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Susan G. Howe, Senior Assistant Attorney General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

Following a stipulated facts trial, defendant was convicted of unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant assigns error to the trial court's denial of her motion to suppress evidence discovered during a traffic stop in which she consented to the search of her car and her purse. She contends that the arresting officer unlawfully extended the traffic stop and that her consent was the unattenuated product of that unlawful conduct. The state responds that the extension of the traffic stop was lawful because the arresting officer had reasonable suspicion that defendant *presently* possessed methamphetamine. We conclude that the totality of the circumstances did not support reasonable suspicion of present methamphetamine possession. Accordingly, we reverse and remand.

We review the trial court's denial of defendant's motion to suppress for errors of law and state the facts consistently with the trial court's express and implied findings where there is constitutionally sufficient evidence to support them. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). Shortly after midnight, Trooper Ledbetter and Detective Assmus were on patrol on Interstate 5 when they observed a car change lanes without signaling at least 100 feet before making the change, in violation of ORS 811.375, and Ledbetter initiated a traffic stop. Defendant was driving the car, and a passenger also rode in the front seat. While approaching the car, Ledbetter noticed that defendant and the passenger were lighting cigarettes. Ledbetter became suspicious because, according to his testimony, it is uncommon for a person, during a traffic stop, to light a cigarette before the officer has had an opportunity to speak to her. Ledbetter also associated such actions with either nervousness or an attempt to mask the smell of controlled substances. However, he also testified that it is not plausible that an individual would light a cigarette to mask the odor of the amount of the methamphetamine that he later found.

Ledbetter also became suspicious when he observed that defendant was "extremely nervous, far beyond a normal traffic stop[.]" When Ledbetter asked for her license and registration, defendant fumbled through her documents

and could not sit still. Defendant also exhibited signs of bruxism (grinding teeth and clenching jaw). Based on his training and experience, Ledbetter believed that defendant's behavior indicated methamphetamine use—though not enough to initiate a DUII investigation—and that defendant would have the implements of methamphetamine use in her car and "possibly [would] have more methamphetamine" in the car and that it was likely in her purse because "illegal substances are often kept in purses[.]"

After defendant provided Ledbetter with all of the necessary information for the traffic stop, Ledbetter asked defendant if there was "anything illegal" in her car that he should be concerned about; defendant responded that there was nothing illegal and that she had just left the airport after picking up her passenger. Ledbetter then asked defendant whether there was anything in her purse of which he needed to be aware. After defendant responded that there was not, Ledbetter asked defendant why she would not allow him to search her purse. She responded that she had personal items that she did not want Ledbetter to see. Finally, Ledbetter asked, whether, if he were to "get a drug dog if it would alert to any part of the vehicle," and defendant responded, "No, we're not trafficking drugs. We just came from the airport."

Based on his earlier observations, however, Ledbetter continued to suspect criminal activity. He asked for consent to search defendant's car and purse, and, in response, defendant consented to search of the car only. She got out of the car and stood by the patrol car where Assmus was standing. Assmus then asked her to set her purse on the trunk of the patrol car, and, soon after, he engaged defendant in conversation and asked if she would consent to a search of her purse. Defendant agreed to show Assmus the contents of her purse by flipping through the items herself. As she was doing so, Assmus noticed that defendant skipped over a small coin purse and emphasized to defendant that "she needed to be honest with me, that we both knew what was in the coin purse." Defendant then showed Assmus the contents of the small coin purse: a vial of methamphetamine, a razor, and a straw.

Defendant subsequently was charged with possession of methamphetamine, and, before trial, she moved to suppress the evidence discovered in her purse. After a hearing on defendant's motion to suppress, the trial court issued an order denying it. As pertinent to our review, the trial court concluded that Ledbetter's extension of the traffic stop was lawful because he had reasonable suspicion that defendant possessed methamphetamine and/or the implements of methamphetamine:

"First, [d]efendant appeared under the influence of a controlled substance. * * * [Ledbetter] observed [d]efendant exhibit [b]ruxism, which * * * Ledbetter indicated is associated with the use of methamphetamine. * * * Ledbetter also testified that nervousness, fidgety behavior, and inability to sit still are all factors pointing to present use of methamphetamine, and that he observed [d]efendant display all of these behaviors.

"* * * Ledbetter's inferences were not based on generalized and stereotypical information. * * * Ledbetter testified to behavior associated with being under the influence of a specific controlled substance (methamphetamine), indicating not only the typical contraband found on individuals presently using methamphetamine (needles, snort tubes, and methamphetamine), but also the location where such contraband is typically found (vehicle or purse). In light of this training and personal experience, the court finds it was reasonable for * * * Ledbetter to conclude that * * * [d]efendant possessed an illegal or controlled substance at the time of the traffic stop.

"Second, [d]efendant had extreme nervousness and fidgety behavior. * * * Combined with [d]efendant's present use of a controlled substance, the court finds [d]efendant's extreme nervousness contributes to the finding of reasonable suspicion."

After a stipulated facts trial, the trial court convicted defendant of unlawful possession of methamphetamine.

On appeal, defendant contends in part that, regardless of whether her behavior was an indication of methamphetamine use or an indication that she was nervous, the totality of the facts did not provide reasonable suspicion that at the time of the stop she possessed

methamphetamine. Accordingly, she argues, the extension of the traffic stop was not lawful and her consent was the unattenuated product of that unlawful extension. The state responds that the officer pointed to specific and articulable facts supporting both the trial court's factual findings and its legal conclusion that Ledbetter had reasonable suspicion that defendant presently possessed methamphetamine.[1] We agree with defendant that the officer did not have reasonable suspicion of present possession.

An officer unlawfully extends the scope of an otherwise lawful stop if the officer questions the person about matters unrelated to the basis for the traffic stop without reasonable suspicion of criminal activity. *State v. Bertsch*, 251 Or App 128, 133, 284 P3d 502 (2012). "Reasonable suspicion as a basis for a stop or a detention requires that the officer subjectively believes that the person has committed a crime and that the belief is objectively reasonable, in light of the totality of the circumstances." *State v. Ehret*, 184 Or App 1, 7, 55 P3d 512 (2002). The officer must be able "to point to specific and articulable facts, interpreted in the light of the existing circumstances and his experience," that the person has committed or is about to commit a crime. *State v. Rutledge*, 243 Or App 603, 610, 260 P3d 532 (2011). Further, the officer's suspicion must be "particularized to the individual based on the individual's own conduct." *State v. Miglavs*, 337 Or 1, 12, 90 P3d 607 (2004).

Here, the officer pointed to defendant's behavior—lighting the cigarette, fumbling through documents, fidgety

---

[1] In addition to that argument with regard to *present* possession of methamphetamine, the state, for the first time on appeal, argues briefly that the arresting officer had, at least, a reasonable belief that defendant recently possessed methamphetamine. We decline, as a prudential matter, to address and decide that proffered alternative basis for affirmance. *State v. Kolb*, 251 Or App 303, 312, 283 P3d 423 (2012) ("[T]he state's present, almost parenthetical, alternative contention implicates matters that are far from parenthetical. Even assuming that the development of the factual record before the trial court would not have been materially affected if that contention had been raised initially, *see Outdoor Media Demensions Inc.* [*v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)], the fact remains that to address that contention meaningfully would require us, in the first instance—without legal record development or any real assistance from the parties—to decide difficult, nuanced, and systemically significant issues. We respectfully decline to do so.").

behavior, extreme nervousness, and symptoms of bruxism—and concluded that, based on his "training and experience," defendant's behavior was indicative of methamphetamine use, and "people that show symptoms of the use of methamphetamine will usually have some sort of way to use the drug, needles, snort tubes, etcetera * * * or *possibly* have more methamphetamine in the vehicle." In addition, the officer testified that "illegal substances are often kept in purses." (Emphasis added.)

Even if the officer correctly concluded that defendant's behavior was consistent with methamphetamine use, his subjective belief—that defendant's methamphetamine use provided a sufficient basis for concluding that she presently possessed methamphetamine—was not objectively reasonable. Although "'reasonable suspicion' is a relatively low barrier[,]" *State v. Jones*, 245 Or App 186, 192, 263 P3d 344 (2011), and "[c]ertainty about the significance of particular facts is not required for a police officer to hold a reasonable belief that they indicate criminal conduct," *State v. Briggs*, 229 Or App 660, 666, 212 P3d 1276 (2009), evidence of methamphetamine use, without more, does not give rise to reasonable suspicion that defendant presently possesses more methamphetamine. *Cf. State v. Lavender*, 93 Or App 361, 364, 762 P2d 1027 (1988) (holding, among other things, that the officer's observations that the defendant was under the influence of a controlled substance, without more, did not establish probable cause "to believe that [the defendant] had committed a crime"); *State v. Morton*, 151 Or App 734, 739, 951 P2d 179 (1997), *rev den*, 327 Or 521 (1998) (officer did not have reasonable suspicion that the defendant passenger unlawfully possessed marijuana based on his observations of the defendant's appearance and behavior that were consistent with being under the influence of marijuana). Likewise, Ledbetter's generalized testimony that, based on his "training and experience," persons who exhibit signs of methamphetamine use may "possibly" have more methamphetamine does not provide a basis for reasonable suspicion. *See Jones*, 245 Or App at 192-93 (an officer's generalized testimony, that, based on his "experience" as a police officer for over 12 years, persons on post-prison supervision are "oftentimes" not permitted to go

to establishments where alcohol is consumed did not provide reasonable suspicion that the defendant was violating his parole or probation). Although "[t]he extent to which an officer must explain the basis of his or her 'training and experience' knowledge * * * varies from case to case across a broad spectrum[,]" *State v. Daniels*, 234 Or App 533, 542, 228 P3d 695, *rev den*, 349 Or 171 (2010), here, there was no testimony establishing the number of years that Ledbetter had served as a patrol trooper at the time of trial much less providing any indication of Ledbetter's "training and experience" related to investigating methamphetamine possession.

We note also that, although Ledbetter became suspicious when defendant refused to consent to the search of her purse and later testified that "illegal substances are often kept in purses," as we have previously held, "[a] person's assertion of a constitutional right cannot support a reasonable suspicion of criminal activity." *Rutledge*, 243 Or App at 610; *see, e.g., Lavender*, 93 Or App at 364 (illustrating the same principle).

In short, the totality of the circumstances did not support reasonable suspicion of present methamphetamine possession.

Reversed and remanded.