Argued and submitted May 29, 2013, reversed and remanded May 13, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DEBORAH KAY BARKER,
*Defendant-Appellant.*

Lane County Circuit Court
201021634; A147777

348 P3d 1138

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Flynn, Judge.*

DUNCAN, P. J.

---

* Haselton, C. J., *vice* Rasmussen, J. pro tempore; Flynn, J., *vice* Wollheim, S. J.

## DUNCAN, P. J.,

In this criminal case, defendant appeals the trial court's judgment convicting her of one count of unlawful possession of methamphetamine, ORS 475.894. Defendant argues that the trial court erred in denying her motion to suppress evidence obtained when a police officer searched her purse without a warrant. The trial court ruled that the officer's search of defendant's purse was a valid search incident to arrest. For the reasons explained below, we conclude that the officer's search was not a valid search incident to arrest because the officer did not have probable cause to arrest defendant. Therefore, the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

## I. BACKGROUND

We review a trial court's denial of a motion to suppress for errors of law, and we are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). Where the trial court did not make express findings and there is evidence from which the trial court could have found a fact in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion. *Id.* at 75. We state the facts in accordance with those standards.

Defendant was a passenger in a truck driven by her husband, which was stopped by Oregon State Police Trooper Ratliff on suspicion of driving while intoxicated. Ratliff noticed that defendant's husband was "overly nervous" and that there was a bottle of alcohol on the seat, as well as many knives, lighters, and trash in the truck. Ratliff took defendant's husband's license, ran a records check on him, and learned that he was a "career criminal" on post-prison supervision. The conditions of defendant's husband's post-prison supervision prohibited him from drinking alcohol and from having contact with defendant. Ratliff asked defendant's husband if she could search the vehicle, and he agreed. Ratliff had him step out of the truck, and she patted him down. Ratliff next asked defendant to get out of the

truck, which defendant was reluctant to do. When defendant finally got out of the truck, she grabbed her purse and tucked it "tightly" under her arm. At this point, as later determined by the trial court, defendant was free to leave. She did not leave.

Defendant was wearing a dress, and Ratliff did not believe she had any weapons in her pockets. Ratliff asked defendant if she had any weapons in her purse, and defendant replied, "I don't want you to search my purse." Defendant never told Ratliff whether or not she had weapons in her purse. In talking to defendant, Ratliff noticed that defendant had bruxism (grinding of teeth and clenching of jaw), and a "leathery look," and that her pupils were dilated. Ratliff knew from her training and experience that those were indicators of "drug use and long-term drug use." Additionally, according to Ratliff, the messy state of the truck also indicated long-term drug use.

For safety reasons, Ratliff instructed defendant to place her purse on the hood of Ratliff's patrol car, which defendant did reluctantly. When the purse was on the hood of the patrol car, it was open, and Ratliff saw a grey digital scale inside it.[1] Based on her training and experience, Ratliff knew that digital scales are sometimes associated with distributing controlled substances. Ratliff ran a records check on defendant and determined that defendant had a "drug history." At that point, Ratliff concluded that she had probable cause to arrest defendant for possession of a controlled substance and to search defendant's purse for evidence of that crime.

Ratliff searched defendant's purse and removed her wallet. Inside defendant's wallet, Ratliff found small baggies, one of which contained methamphetamine.[2] After discovering the methamphetamine, Ratliff arrested defendant for possession of a controlled substance, and the state subsequently charged defendant with one count of possession of methamphetamine.

---

[1] The trial court did not make an explicit finding regarding who opened the purse; rather, the court determined that it did not matter who opened the purse.

[2] Ratliff also discovered a pipe used to smoke methamphetamine in a sunglasses case in defendant's purse.

Prior to trial, defendant moved to suppress evidence of the methamphetamine, arguing that the search of her purse violated Article I, section 9, of the Oregon Constitution, because Ratliff lacked probable cause to arrest her. The state argued to the trial court that Ratliff had probable cause to arrest defendant for a drug crime and that the search of defendant's purse was therefore a valid search incident to arrest.

At the hearing on defendant's motion to suppress, Ratliff testified to the above facts and summarized the factors that caused her to believe that defendant was "more likely than not" in possession of drugs: "Inability to remain still, dilated pupils, that leather look—leathery skin—heavy bruxism." Ratliff went on to note that the "innocent motoring public doesn't generally have those indicators. They don't get out of the vehicle and tuck their purse tightly with them and immediately refuse search."

The trial court denied defendant's motion and summarized its pertinent findings as follows:

"I find that the election to stay at the scene, the officers requiring separation of the purse from the defendant was a lawful request. I didn't find any evidence the officer asked to search the purse.

"That being the case, whether the defendant opened it in a manner she intended the officer to see inside or it just flopped open, as she says it did in her testimony, frankly is irrelevant.

"Once the officer observed the scales together with the other indications of drug use, as testified to—which I find credible—I believe she had probable cause to continue a search.

"I read the case law carefully. Counsel is correct that drug use without more is not an appropriate basis for a search, but I put a great emphasis in the court's notation and that limitation 'without more.'

"That doesn't mean that someone showing obvious signs of drug intoxication or use is not something that can be considered in totality of the circumstances justifying an establishment of probable cause."

Defendant appeals, arguing that the trial court erred in denying her motion to suppress. Defendant argues that "physical signs of drug use and drug history are not sufficient in themselves to establish even *reasonable suspicion*, let alone probable cause. Nor do nervousness or the presence of a scale add significantly to the probable cause calculus." (Emphasis in original.) Defendant concludes that, not only is each factor solely insufficient to establish probable cause, but "under the totality of the circumstances in this case, the facts are not objectively sufficient to establish probable cause."

The state responds that, "[b]ecause [Ratliff] had probable cause to arrest defendant, the search was valid as a search incident to arrest." Specifically, the state argues that "the totality of the circumstances—including defendant's conduct toward her purse, the digital scale in her purse, indications that she was under the influence of drugs, and her history of drug use—created probable cause that defendant was committing the crime of possession of a controlled substance." The state focuses on defendant's conduct toward her purse and argues that that conduct, "when combined with the other circumstances, created probable cause that defendant was in possession of a controlled substance and was seeking to hide that fact from [Ratliff]."

## II. ANALYSIS

### A. *Legal framework*

Article I, section 9, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" A warrantless search is *per se* unreasonable unless it falls within "one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted). Search incident to arrest is one of the well-recognized exceptions. Article I, section 9, authorizes a search incident to arrest to protect the officer's safety, prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant is being arrested. *State v. Hoskinson*, 320 Or 83, 86-87, 879 P2d 1980 (1994).

"An officer has probable cause to arrest a person only when the officer has a substantial objective basis for believing that, more likely than not, an offense has been committed and the person to be arrested has committed it." *State v. Martin*, 260 Or App 461, 471, 317 P3d 408 (2014) (citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)). It is the state's burden to prove that a warrantless arrest and search was supported by probable cause. ORS 133.693(4); *State v. Foster*, 350 Or 161, 169-70, 252 P3d 292 (2011). To do so here, the state must prove two things: (1) that Ratliff subjectively believed that a crime had been committed and, thus, that the purse was subject to search and (2) that Ratliff's belief was objectively reasonable under the circumstances. *See State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009) (stating that "two components comprise probable cause: an officer must subjectively believe that a crime has been committed * * *, and this belief must be objectively reasonable in the circumstances" (internal quotation marks omitted)). Defendant concedes that Ratliff subjectively believed that she had probable cause to arrest defendant for possession of a controlled substance before searching her purse. Therefore, the only issue before us is whether the trial court erred in concluding that Ratliff's belief was objectively reasonable.

The determination of objective probable cause is a legal, rather than factual, question. *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). In determining whether an officer's belief is objectively reasonable, we examine the totality of the circumstances, including the officer's training and experience. *State v. Ayvazov*, 246 Or App 641, 646-47, 267 P3d 196 (2011), *rev den*, 351 Or 675 (2012).

At the time that she searched defendant's purse, Ratliff knew that defendant (1) was in a truck that contained many knives, lighters, and trash, which, based on Ratliff's experience, indicated long-term drug use; (2) had bruxism and a "leathery look," which, based on Ratliff's experience, also indicated long-term drug use; (3) was unable to remain still and had dilated pupils, which, based on Ratliff's experience, indicated recent drug use; (4) had a "drug history"; (5) carried a digital scale in her purse, which, based on Ratliff's experience, is an item used by someone who

distributes controlled substances; and (6) was protective of her purse and did not want it searched. We examine those facts individually and collectively to determine if, under the totality of the circumstances, Ratliff's belief that it was more likely than not that defendant possessed a controlled substance was objectively reasonable.

B.  *Evidence of defendant's past and current drug use*

As mentioned, several of the factors Ratliff noted were, in her opinion, consistent with long-term drug use. Even assuming that is true, those factors relate primarily to past drug use, not current possession. As we have previously held, the mere fact that a defendant has a history of drug use does not provide an officer with reasonable suspicion to stop a defendant, let alone probable cause to search or arrest. *See State v. Frias*, 229 Or App 60, 65, 210 P3d 914 (2009) (fact that the defendant was awaiting sentencing for a drug conviction and had dark circles under his eyes, which indicated past drug use, did not provide reasonable suspicion that a current drug crime had occurred or was imminent); *State v. Holcomb*, 202 Or App 73, 78, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 125 P3d 22 (2005) (stating that no Oregon cases have endorsed the proposition that "a person's recent drug use is sufficient, without more, to establish reasonable suspicion of present drug possession[,]" and declining to do so because adopting the state's position would "effectively sanction nonparticularized, status-based stops of habitual drug users"). As such, the evidence of defendant's past drug use—the messy truck, bruxism, "leathery look," and "drug history"—did not alone provide Ratliff with reasonable suspicion, much less probable cause, and the evidence provides little support to a conclusion that it was more likely than not that defendant was in current possession of a controlled substance.

For similar reasons, defendant's inability to remain still and dilated pupils also contribute little to establishing probable cause. On this point, *State v. Kolb*, 251 Or App 303, 283 P3d 423 (2012), is instructive. In *Kolb*, we examined whether signs that the defendant was under the influence of methamphetamine supported reasonable suspicion that the defendant was in unlawful possession of a controlled

substance. At the defendant's suppression hearing, the officer had testified that "[p]eople who usually are under the influence had to obviously take the methamphetamine. It's very common that they have pipes, needles, syringes, paraphernalia with them when they are under the influence." *Id.* at 307. The trial court found that it was a "fair inference" that a person under the influence of a controlled substance would have the substance in his or her possession in the form of residue on implements used to ingest the substance. *Id.* at 308.

We reversed, determining that the trial court had impermissibly engaged in a "stacking of inferences" in order to arrive at its conclusion that the officer had reasonable suspicion. *Id.* at 313, 315 (internal quotation marks omitted). We characterized the premise that persons under the influence of methamphetamine would posses and retain implements of their drug use as "innately inferential." And, we determined that the "generic proposition" that retained implements often bear evidence of prior methamphetamine use was impermissibly speculative on the record in the case; it was, as we described it, "a bridge never built." *Id.* at 314 (internal quotation marks omitted). Therefore, we concluded that the trial court had erred in ruling that the stop was supported by reasonable suspicion based on the propositions that the defendant likely still possessed the instruments of his methamphetamine use and that those instruments likely had methamphetamine residue on them. *Id.* at 315.

If, as we held in *Kolb*, evidence that a person is exhibiting signs of methamphetamine use is insufficient to give rise to *reasonable suspicion* that the person is in possession of methamphetamine, it follows that evidence that a person is exhibiting signs of controlled substance intoxication is insufficient to establish *probable cause* to arrest the person for possession of a controlled substance. Therefore, here, evidence of defendant's intoxication does not contribute significantly to the totality of the probable cause calculus, absent evidence connecting the intoxication to current possession.

## C. *Defendant's scale*

We turn now to the remaining facts that Ratliff relied on to search defendant's purse—the scale in the purse

and defendant's protective behavior toward her purse. In *State v. Lane*, 135 Or App 233, 898 P2d 1358, *rev den*, 322 Or 360 (1995), we examined facts similar to the facts in this case, and as such, it is useful to both our analysis of the significance of defendant's scale and of the totality of the circumstances. In *Lane*, two deputies stopped the defendant in a store parking lot. The defendant was very nervous and agitated, his hands were shaking, and he never stopped moving during the course of the conversation with the deputies. *Id.* at 235. The deputies eventually arrested the defendant for driving while under the influence of alcohol. After his arrest, the defendant refused to consent to the deputies searching his truck. The deputies impounded the truck and performed an inventory search. They found a gun, a marijuana pipe containing residue, a small set of scales, and a small, black film canister. One of the deputies opened the canister and found a plastic bag with methamphetamine inside it. *Id.* at 236.

The issue on appeal in *Lane* was whether the defendant's nervous and agitated manner, the marijuana pipe with marijuana residue, the scale, and the film canister gave the deputy probable cause to believe that the defendant was in possession of a controlled substance, such that the deputy could open the closed film canister as a search incident to arrest. *Id.* at 239-41. We concluded that the deputies did not have objectively reasonable probable cause to arrest the defendant for possession of a controlled substance, and, therefore, the search of the film canister was not a valid search incident to arrest. *Id.* at 240-41.

First, we noted that, "[b]ecause possession of less than an ounce of marijuana is a violation, for which a person may not be arrested, probable cause to arrest could not have been based *solely* on the residue of marijuana discovered in the pipe." *Id.* at 239-40 (citations omitted; emphasis added). Next, because the record in *Lane* did not indicate where the scale was located in proximity to the marijuana pipe or film canister, we concluded that "the scale adds little to support a finding of probable cause." *Id.* at 240. As for the film canister itself, we determined that it was "not the type of container that is so uniquely associated with the

storage and transportation of controlled substances that it, alone, might provide an officer with training and experience probable cause to believe that it contains a controlled substance." *Id.* (internal quotation marks and footnote omitted). Finally, after determining that each individual factor could not alone provide the deputy with objective probable cause, we concluded that, "even considered collectively, the marijuana residue, the film canister, and the scale, along with defendant's nervousness and agitation, did not provide an objectively reasonable basis to believe that defendant was in possession of either marijuana or some other controlled substance[.]" *Id.* at 240-41.

This case is akin to *Lane*. Thus, as in *Lane*, we conclude that evidence that defendant had used controlled substances in the past, was exhibiting signs of current intoxication (like the defendant in *Lane*, she was unable to stand still), and was in possession of a scale was insufficient to give rise to probable cause to arrest defendant for current possession of a controlled substance. Moreover, as in *Kolb*, the record in this case lacks evidence to support an objectively reasonable inference that, even if the scale was used in connection with controlled substances, it was more likely than not that defendant was in current possession of controlled substances, as residue on the scale or otherwise. *See Kolb*, 251 Or App at 315.

D. *Defendant's protective behavior toward her purse*

Finally, we examine defendant's behavior toward her purse. The state argues that "[t]he strongest indicator that defendant was in possession of drugs was her conduct towards her purse." The state asserts that defendant's behavior toward her purse makes this case similar to *State v. McCoy*, 155 Or App 610, 964 P2d 309 (1998), and *State v. Smith*, 97 Or App 114, 775 P2d 335, *rev den*, 308 Or 315 (1989). In *McCoy*, we determined that an experienced narcotics officer had probable cause to search the defendant's coat when the defendant was in a high drug-trafficking area, the defendant's appearance indicated both long-term and more recent drug use, the defendant was wanted for a methamphetamine crime, and the defendant was anxious to get rid of his coat, even though it was a cold night. 155 Or

App at 615-16. Specifically, the defendant in *McCoy* tried to give his coat to a woman outside his building after the officer informed the defendant that he was going to take him into custody. *Id.* at 613. In *Smith*, we determined that an officer had probable cause to search a black compact that the officer found in one of the defendant's boots during a jail inventory search, because, among other reasons, the defendant was concealing the compact. 97 Or App at 116-17.

We are not persuaded that this case is analogous to *McCoy* or *Smith*; rather, defendant's behavior resembles that of the defendant in *State v. Lavender*, 93 Or App 361, 762 P2d 1027 (1988). In *Lavender*, we held that an officer's search of the defendant's purse was not objectively reasonable when the defendant had a prior drug offense, appeared to be under the influence of drugs, and attempted to conceal the contents of her purse. 93 Or App at 364. Specifically, when the defendant was retrieving her identification from her purse, the officer shined a light into it and the defendant quickly closed the purse and moved it, as to conceal its contents. *Id.* at 363. Regarding the defendant's behavior toward her purse, we stated that,

> "[m]ost importantly, the fact that defendant closed her purse and pulled it away from the officers could not support probable cause to believe that she had committed a crime. By that act, defendant exhibited her intention to protect the privacy of her purse. The assertion of a constitutionally protected right against warrantless searches cannot be a basis for such a search."

*Id.* at 364. Here, defendant's behavior of tightly clutching her purse and refusing a search manifested a similar desire to protect the privacy of the item and, as such, was an assertion of her constitutional rights.

When an individual seeks to protect an item and openly asserts his or her privacy rights, that behavior and assertion is neither innately shifty nor sinister—rather, it is constitutionally protected. And, "[a]llowing the police to conduct a search on the basis of the assertion of a privacy right would render the so-called right nugatory." *State v. Brown*, 110 Or App 604, 611, 825 P2d 282 (1992). Although furtive behavior may contribute to probable cause, asserting a

constitutionally protected privacy right cannot.[3] Defendant's protective behavior to safeguard the privacy of her purse and her statement that she did not want it searched are not properly considered as part of the totality of the circumstances and may not contribute to probable cause.

## III. CONCLUSION

With defendant's behavior toward her purse removed from the probable cause calculus, all that remains is the evidence of defendant's historical and recent drug use—behavior that fails to establish even reasonable suspicion of possession of a controlled substance—and the scale located in defendant's purse. Thus, as explained above, this case presents a similar constellation of facts to those we determined to be insufficient to establish probable cause in *Lane*. 135 Or App at 240-41 (stating that "considered collectively, the marijuana residue, the film canister, and the scale, along with the defendant's nervousness and agitation, did not provide an objectively reasonable basis to believe that defendant was in possession of either marijuana or some other controlled substance"). Therefore, under the totality of the circumstances, Ratliff's belief that defendant more likely than not possessed a controlled substance was not objectively reasonable, and the search violated Article I, section 9. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[3] *Compare State v. Diaz*, 29 Or App 523, 533-35, 564 P2d 1066 (1977) (officer had sufficient information to justify a warrantless search of a film canister when the defendant, after being arrested for receiving stolen property and after the police found drugs in his house, nudged a film canister to another resident and told her to get the film developed), *with State v. Gressel*, 276 Or 333, 339, 554 P2d 1014 (1976) ("[A] suspicion, however well founded, having been aroused merely on the basis of an assertion of one's constitutional rights [not to be searched], can play no part in creating probable cause for a search."), *State v. Farrar*, 252 Or App 256, 262, 287 P3d 1124 (2012) (the defendant's refusal to consent to a search of her purse did not contribute to establishing reasonable suspicion), *State v. Medinger*, 235 Or App 88, 94, 230 P3d 76 (2010) (the defendant's refusal to answer the officer's questions was not "strange" or "furtive"; rather, it was the exercise of a constitutionally protected right, and therefore did not affect the probable cause analysis), *and State v. Wise*, 72 Or App 58, 62 n 3, 695 P2d 68 (1985) ("A refusal to consent to a search cannot aid in showing probable cause for a search.").