Argued and submitted January 30, 2014, affirmed March 4, petition for review denied July 9, 2015 (357 Or 551)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BURTON LEE ASKER NICHOLS,
*Defendant-Appellant.*

Washington County Circuit Court
D113550T; A151058

345 P3d 468

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael Seung Moak Shin, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jake J. Hogue, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Egan, Judge, and De Muniz, Senior Judge.

## ARMSTRONG, P. J.

Defendant appeals his judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. He argues that the trial court erred in denying his motion to suppress evidence because the police officer who stopped him lacked reasonable suspicion that he was committing DUII and, hence, the officer violated Article I, section 9, of the Oregon Constitution[1] and the Fourth Amendment to the United States Constitution[2] by stopping him. We conclude that, under the totality of the circumstances observed and articulated by the officer, the officer's stop of defendant was justified by reasonable suspicion. Accordingly, we affirm.

We review a trial court's denial of a suppression motion for legal error, and defer to the trial court's findings of fact when there is sufficient evidence in the record to support them. *State v. Bertha*, 256 Or App 375, 378, 300 P3d 265 (2013). In the absence of express findings, we assume that the trial court resolved any factual disputes consistently with its ultimate conclusion. *Id.* In accordance with that standard, the pertinent facts are as follows.

Around 2:00 p.m., Washington County Sherriff's Deputy Braun was near a pub responding to an unrelated call. Braun is a field-training officer and a field sobriety test (FST) instructor, with significant training and experience identifying signs of intoxication and handling DUII stops. While on the original call, he went into the pub to speak to a patron and noticed two loud, boisterous women sitting in a patio area who appeared to be intoxicated. After Braun left

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

[2] The Fourth Amendment to the United States Constitution provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

Defendant does not contend that the Fourth Amendment requires us to apply a standard that is different or more demanding than our case law based on Article I, section 9, nor does he develop an argument based on the Fourth Amendment. Accordingly, we review defendant's assignment of error only under Article I, section 9. *See, e.g., State v. McNeely*, 330 Or 457, 468, 8 P3d 212, *cert den*, *531 US 1055 (2000)* (declining to address constitutional claims asserted but not developed).

the pub, he was standing with other officers in the parking lot area away from the pub. Braun saw the two intoxicated women from the pub leave and head toward a vehicle, when defendant came out to join them. The two women were "very intoxicated" and "appeared to be almost falling down" when they got into the vehicle. Defendant followed them over to the vehicle with "slow and deliberate" steps that "did not appear to be fluid and natural" and, upon reaching the vehicle, he kept touching it with his hand. Braun testified in response to the prosecutor's questions about defendant's movement:

> "I just remember it was very unusual. It wasn't like he was dragging his hand down the length of the vehicle as if to orient himself with in the world. But it was just more like a motion as if to verify, 'Hey, this is still here. This is still here. This is still here.'
>
> "Q   Almost as if steadying himself?
>
> "A   No. Almost as if you're walking down a hall at night and you're just trying to make sure the wall is still there, just kind of, 'Okay, I know where I am in the hallway just by the position of the wall.'"

Defendant then got into his vehicle, which was partially blocked in by a semi-truck. Braun testified that defendant could have come out with "a three- or four-point turn." Instead of trying to leave, defendant waited in his vehicle. After "a while," the semi-truck driver finished loading his truck and honked his horn before backing up. Defendant honked his horn in return. Defendant then backed out without difficulty and began driving down the center of a two-way driving lane in the parking lot, blocking both lanes, instead of toward the right side where a painted line on the right-hand side of the driving lane indicated where to stop before proceeding out of that section of parking. After driving about 20 feet, Braun, who was in uniform, walked over and flagged defendant to stop. Defendant started to drive away, so Braun flagged him down again, and defendant stopped while still within the parking lot. Braun testified that he found defendant's touching of the vehicle and driving down the middle of the lane "alarming," because it indicated that defendant's spatial recognition was impaired.

The trial court denied defendant's motion to suppress evidence obtained from Braun's stop. The court readily found that Braun had a subjective belief that he had reasonable suspicion to justify a stop; the question was whether that belief was objectively reasonable. On that point, the trial court concluded, based on the totality of the circumstances, that it was, even though each piece of information relied on by Braun individually would not have been enough to create reasonable suspicion of DUII.

The Oregon Supreme Court has recently resummarized Oregon case law on reasonable suspicion to support an investigatory stop:

> "The people have a liberty interest to be free from unreasonable searches and seizures that is protected by provisions of the Oregon and federal constitutions. The standard of 'reasonable suspicion' justifying a police intrusion on that liberty interest when a person is stopped was intended to be less than the standard of probable cause to arrest. A stop is unlawful unless it meets an objective test of reasonableness based on observable facts. Officer intuition and experience alone are not sufficient to meet that objective test. However, if an officer is able to point to specific and articulable facts that a person has committed a crime or is about to commit a crime, the officer has a 'reasonable suspicion' and may stop the person to investigate."

*State v. Holdorf*, 355 Or 812, 822-23, 333 P3d 982 (2014).

The "specific and articulable facts" on which Braun relied were that (1) defendant left the pub in the company of two very intoxicated women, (2) defendant walked in a "slow and deliberate" manner that did not appear fluid or natural, (3) defendant touched his vehicle with his hand repeatedly as if to orient himself spatially, (4) defendant waited for the semi-truck to pull out and gave it a return honk, and (5) after defendant pulled out, he drove down the center of a two-way driving lane.

Defendant argues that, because there was a noncriminal explanation for all of his conduct, Braun's observations, whether taken individually or collectively, were insufficient to give rise to an objectively reasonable suspicion that he was driving under the influence of intoxicants. In making

his argument, defendant picks apart each of the identified facts and provides an "innocent" explanation for them. However, as the Supreme Court has instructed, that is not the approach that we are required to take in determining if an officer had reasonable suspicion for a stop. Instead, our "judicial review looks to the totality of the circumstances confronting a police officer." *Holdorf*, 355 Or at 824.

Although defendant is correct that merely being in the company of visibly intoxicated people while leaving a pub would be insufficient by itself to establish reasonable suspicion in this case, that fact is nonetheless part of the totality of the circumstances that Braun confronted and that we must thus consider. *See id.* (rejecting analysis that rejected any information pointing to criminal activity not relating to "defendant himself" and reiterating that our review looks to the totality of the circumstances and "not just those circumstances that directly relate to a suspect or are personally observed by the police officer stopping a suspect"). Here, it was the two intoxicated women who appeared to be going to a car, without defendant, that drew Braun's attention in the first place, such that he then paid particular notice to defendant as he left the pub. Braun then observed defendant's slow and deliberate gait, which was not fluid or natural, and his unusual manner of touching his vehicle to orient himself. In the totality of the circumstances, defendant's behavior as he left the pub and climbed into the driver's seat of his vehicle are specific and articulable facts that gave rise to a reasonable inference that defendant was about to commit DUII.

In addition, nothing about defendant's behavior after he climbed into his vehicle cut against Braun's reasonable suspicion that defendant was in the process of committing DUII at the time of the stop. Specific and articulable facts, in light of Braun's training and experience, supported Braun's continued reasonable suspicion—*viz.*, defendant's unusual return honk to the semi-truck, waiting for the semi-truck to leave, and driving down the middle of a driving lane that was large enough for two lanes of traffic. In particular, Braun found the fact that defendant drove down the middle of the lane to be "alarming" because, in conjunction with

defendant's unusual touching of the vehicle, it caused him to believe that defendant's spatial recognition was impaired by intoxicants.

In making his argument that the facts articulated by Braun are not sufficient, defendant largely relies on *State v. Kentopp*, 251 Or App 527, 284 P3d 564 (2012); *State v. Maciel*, 254 Or App 530, 295 P3d 145 (2013); and *State v. Alvarado*, 257 Or App 612, 307 P3d 540 (2013). However, those cases do not help defendant. Each of them involved an officer extending a traffic stop to investigate an unrelated drug crime. *Kentopp*, 251 Or App at 532 (drug possession); *Maciel*, 254 Or App at 536 (drug trafficking); *Alvarado*, 257 Or App at 627 (drug trafficking). Also, in each of those cases the officer relied on facts that had minimal, if any, objective relevance to the suspected crime, such that those facts did not give rise to a reasonable inference of the suspected criminal activity. *Kentopp*, 251 Or App at 532-33 (leaning down while being pulled over and having a nervous demeanor and rotting teeth were insufficient to give rise to reasonable suspicion of drug possession); *Maciel*, 254 Or App at 538-41 (a religious medallion on the rearview mirror, lack of visible luggage, California license plates, traveling on I-5, having prepaid cellular phones, and offering an implausible story about where the defendant had obtained the car were insufficient to give rise to a reasonable suspicion of drug trafficking); *Alvarado*, 257 Or App at 628-31 (traveling on an interstate, slowing upon spotting police, vehicle smelling of cologne and air fresheners, having a cellular phone and pager, having an energy drink, the presence of "religious symbols," being nervous, driving someone else's car, and giving an unusual story about travel reasons were insufficient to give rise to a reasonable suspicion of drug trafficking).

In contrast to each of those cases, here, Braun articulated specific facts that objectively gave rise to the reasonable inference that defendant was committing DUII because those facts tend to show that defendant's balance or spatial awareness was impaired upon leaving a pub—*viz.*, a slow and deliberate walk, touching the vehicle to orient himself to it, waiting on the semi-truck before attempting to leave, and driving down the center of the driving lane. That there may be an innocent explanation for any, or all of those facts,

"'does not mean that the conduct cannot also give rise to reasonable suspicion of criminality.'" *See State v. Martin*, 260 Or App 461, 469, 317 P3d 408 (2014) (quoting *State v. Villemeyer*, 227 Or App 193, 198, 205 P3d 49 (2009)); *see also State v. Hiner*, 240 Or App 175, 181, 246 P3d 35 (2010) ("Reasonable suspicion, as a basis for an investigatory stop, does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person.").

Based on the totality of the circumstances observed and articulated by Braun, we conclude that Braun's stop of defendant was justified by reasonable suspicion. Because Braun had reasonable suspicion to stop defendant, we also conclude that the stop did not violate Article I, section 9, and we affirm the trial court's denial of defendant's motion to suppress.

Affirmed.