Submitted April 29, 2014, affirmed March 25, 2015

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**TONYA A. FERGUSON,**
*Defendant-Appellant.*

Josephine County Circuit Court
11CR0580; A151904

346 P3d 1242

Peter Gartlan, Chief Defender, and David Sherbo-Huggins, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Pamela J. Walsh, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Defendant entered a conditional guilty plea for unlawful possession of methamphetamine, ORS 475.894.[1] She appeals the judgment of conviction, assigning error to the trial court's denial of her motion to suppress evidence. She argues that the stop of her van was unlawfully extended, that the police did not have reasonable suspicion to investigate defendant for drug possession, and that her consent to search the van was an impermissible exploitation of an unlawful seizure of defendant—all in violation of Article I, section 9, of the Oregon Constitution. We review for legal error and are "bound by the trial court's findings of historical fact if evidence supports them." *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). Where a trial court has not made an express finding, we presume that the court found facts consistent with its ultimate conclusion. *Id.* at 127; *State v. Watson*, 353 Or 768, 769, 305 P3d 94 (2013). We affirm.

The relevant facts are undisputed, except where otherwise noted. Corporal Hamilton saw defendant driving a van without a front or rear license plate, which is a traffic violation. ORS 803.655. He signaled to her to stop at about 1:02 a.m. The encounter was recorded by "I-COP," an in-car camera system in Hamilton's patrol car.[2] When he approached the van, Hamilton noticed a temporary permit attached to the bottom of the driver's side windshield, and he told her that the permit was improperly displayed. Looking closely, Hamilton saw that the permit was expired and had been altered to make the date appear current. Defendant was unable to produce a driver license, and, when pressed, she offered a medical card as means of identification. Defendant told Hamilton that the van belonged to her sister and that she was driving it back to her sister after the van had broken down and had been fixed. She could not offer proof of insurance or vehicle registration.[3] Defendant added that her sister had driven the van from Texas and

---

[1] The statute provides that, absent a statutory exception, it is "unlawful for any person knowingly or intentionally to possess methamphetamine ***." ORS 475.894(1).

[2] The recording was admitted into evidence at the motion to suppress hearing.

[3] Failure to carry or present a license is a misdemeanor criminal offense. ORS 807.570. Driving while uninsured is a Class B traffic violation. ORS 806.010.

had moved to Oregon a few months ago. Defendant seemed "fidgety." Her appearance was consistent with that of a person who had used a central nervous system stimulant such as methamphetamine, and her behavior was inconsistent with the medications listed on the medical card that she had offered as identification.

At 1:06 a.m., Hamilton contacted dispatch to confirm defendant's identity. At about 1:07 a.m., Hamilton asked dispatch to run the van's VIN number. Within a few minutes, dispatch reported that no matching records could be found in a western-state database. At 1:09 a.m., Hamilton asked dispatch to recheck the VIN number in a Texas database. He believed that the van was uninsured and suspected that it could have been stolen, because the VIN did not match the first database search or insurance records. By this time, Hamilton intended to impound the van.

Hamilton sought consent to search defendant, her purse, and the van. Defendant initially refused to consent to a search of the van and her purse, but she consented to a search of her person.[4] That search did not reveal any evidence of illegality. At about 1:13 a.m., the following conversation ensued, during which defendant consented to a search of the van:

"[Hamilton]:    * * * So, now I searched you. Can I search your purse?

"[Defendant]:   No, not really.

"* * * * *

"[Defendant]:   I don't have anything in there, but, but why do have to—

"[Hamilton]:    You're asking me, I, I'm going through the steps for you.

"[Defendant]:   Okay, but.

"[Hamilton]:    Cuz I simply just want to search you car.

"[Defendant]:   Okay.

---

[4] Hamilton continued speaking to dispatch in between his interaction with defendant and received a confirmation of her identity as he was asking whether she would consent to a search. He radioed defendant's address back to dispatch and confirmed the address with defendant at approximately 1:11 a.m.

"[Hamilton]:    That's why I'm kinda going in order now. You let me search you. Can I search your purse?

"[Defendant]:    No, not really.

"[Hamilton]:    Okay. Can I search the car?

"[Defendant]:    Yeah."

By 1:16 a.m., in the course of searching the van, Hamilton found another person's driver license in the glove compartment and syringes in plain view. The syringes were visible in a cosmetic bag in defendant's open purse, which was in the van.[5] Hamilton removed defendant's purse and cosmetic bag while another officer helped conduct a search. Residue on a piece of plastic found during that search tested positive for methamphetamine.[6] Defendant was placed under arrest. Hamilton reinspected the van's VIN and asked dispatch to read the VIN back to him at 1:21 a.m.[7]

Defendant was charged with unlawful possession of methamphetamine. ORS 475.894. She moved to suppress the evidence, arguing that Hamilton had unlawfully extended the stop. The trial court denied defendant's motion. In a letter opinion, the court explained that there was no unlawful extension of the stop, because Hamilton had "developed a reasonable suspicion of various types of criminal activity, such as forgery, DUII, and failure to carry and present a driver's license." This meant that Hamilton's request to search occurred during a lawful investigation. Given the number of criminal issues that presented themselves, the court continued, Hamilton would not have been able to resolve the stop more expeditiously. The trial court found that defendant's consent to the search was voluntary and added that the evidence would inevitably have been

---

[5] Although this fact was disputed in the pretrial hearing, in the trial court's letter opinion, the court made a credibility finding in favor of Hamilton's testimony as to the fact that the purse was open and unzipped and that the syringes were in plain view.

[6] The search revealed a total of 81 syringes and the piece of plastic or baggie. The syringes were not tested for the presence of drugs.

[7] At the hearing on defendant's motion to suppress, Hamilton testified that it "wasn't until 1:21:56" that he received "answers about whether or not that vehicle was stolen" and that he had waited "that entire time"—a period of 20 minutes—for that information.

discovered in the course of an inventory search, or during a search incident to defendant's arrest.

On appeal, defendant argues that her consent to search occurred during an unlawfully extended stop because there was no reasonable suspicion to support a drug possession investigation and because Hamilton pursued drug-related inquiries outside of an unavoidable lull in the investigation. Defendant argues that the dispatch likely responded within a few minutes of Hamilton's request for a check of a Texas database (*i.e.*, 1:09 a.m.) and, therefore, Hamilton should have begun issuing citations "by 1:11 a.m., at the latest[.]" At that point, defendant suggests, "the trial court could have reasonably inferred that Hamilton had all of the information he needed to begin processing the citations[.]"

The state responds that there was no unlawful extension of the stop and that defendant's consent occurred during an unavoidable lull in Hamilton's lawful investigation of other crimes. The state argues that Hamilton "did not get an answer to his inquiries about whether the VIN was in the Texas database until 1:21:56." In the state's view, Hamilton needed to detain defendant longer than an ordinary traffic stop because Hamilton had reasonable suspicion of several crimes, such as vehicular theft.

As we will explain, we agree that the trial court did not err in its denial of defendant's motion because the stop was not unlawfully extended, and because defendant consented to the search of the van during an unavoidable lull in an ongoing investigation.[8] Article I, section 9, prohibits unreasonable searches and seizures.[9] To be reasonable, a traffic stop "must be supported by reasonable suspicion that the defendant has engaged in criminal activity. Once the traffic stop ends, the authority to detain the defendant ends." *State v. Amaya*, 176 Or App 35, 43, 29 P3d 1177 (2001), *aff'd*

___

[8] As we affirm on this basis, we need not discuss defendant's other contentions that Hamilton lacked reasonable suspicion that defendant possessed drugs, that the state did not prove that the evidence would have been inevitably discovered, and that the search was not justified as a search incident to arrest.

[9] Article I, section 9, provides, in relevant part, that "[n]o law shall violate the right of the people to be secure * * * against unreasonable search, or seizure[.]"

*on other grounds*, 336 Or 616, 89 P3d 1163 (2004). It is well established, however, that when a traffic stop provides reasonable suspicion of other crimes, officers may investigate that suspected criminal activity. *Watson*, 353 Or at 785 ("[A]n officer may develop reasonable suspicion or probable cause during the course of a traffic stop that may justify activities that would not have been permissible based on the original purpose of the stop."). Reasonable suspicion requires an officer to form an objectively reasonable belief, given the totality of the circumstances, that a person may have committed, or may be about to commit, a crime. *State v. Faubion*, 258 Or App 184, 193, 308 P3d 337 (2013).

Absent reasonable suspicion of other crimes, an officer's authority to detain a motorist ceases "when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." *State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010). "Accordingly, when a police officer has all of the information necessary to complete a traffic investigation but, instead of ending the encounter, 'launch[es] an investigation into a matter that is unrelated to the infraction, [the officer has] unlawfully extended the stop.'" *State v. Peterson*, 259 Or App 294, 299, 313 P3d 388 (2013) (quoting *State v. Alvarado*, 257 Or App 612, 627, 307 P3d 540 (2013)). Police officers may conduct lengthier investigations, resulting from a routine traffic stop, but an officer's activities must be "reasonably related to that investigation and reasonably necessary to effectuate it[,]" otherwise there must be some other constitutional justification for the officer's activities. *Watson*, 353 Or at 781.

This case requires us to first resolve whether the stop extended beyond that point in time when an investigation, for which Hamilton had reasonable suspicion, reasonably should have been completed. We agree with the parties that the initial stop of defendant's van was lawful. We do not agree with defendant's contention, however, that "by 1:11 a.m., at the latest," Hamilton should have issued citations and that instead he pursued an investigation for which he lacked reasonable suspicion.

During the course of a lawful stop for a traffic violation, Hamilton identified a host of additional, potential issues within a brief period of time: failure to properly display a license plate; an altered or forged temporary permit; an inability to present a driver license; an absence of registration and proof of insurance for the van; and indicia of defendant's drug use. Hamilton testified that he suspected that the van was stolen, and, at the very least, uninsured. Defendant does not dispute that the evidence supported an objectively reasonable belief that defendant had committed vehicular theft or driving while uninsured. Given the totality of those circumstances, the trial court did not err in determining that Hamilton developed reasonable suspicion that justified extending the stop beyond the time it would ordinarily take to issue a traffic citation. Therefore, Hamilton did not unlawfully extend the stop because he had developed reasonable suspicion to investigate other potential violations or crimes.

In fact, defendant acknowledges as much, and does not challenge the trial court's conclusion that Hamilton had reasonable suspicion of various crimes related to the vehicle. She argues, however, that his inquiries about whether she possessed anything illegal and his consent request to search her person, her purse, and her vehicle were nonetheless unlawful because they were unrelated to the crimes for which he had reasonable suspicion. Such questioning or requests to search only implicates Article I, section 9, if those police activities result in the stop being delayed. *Amaya*, 176 Or App at 43; *cf. State v. Hall*, 238 Or App 75, 83, 241 P3d 757 (2010), *rev den*, 349 Or 664 (2011) ("no Article I, section 9, implications if an inquiry unrelated to a traffic stop occurs during a routine stop but does not delay it"). In other words, a police officer may pursue lines of questions outside the scope of a crime for which there is reasonable suspicion, but only if that questioning does not prolong the stop as a whole.

Our decision in *State v. Kentopp*, 251 Or App 527, 284 P3d 564 (2012), is instructive. In that case, the defendant was stopped for traffic violations and, although the officer had reasonable suspicion to investigate whether

the car was stolen, he instead detained the defendant and conducted a drug-related investigation, although he lacked reasonable suspicion on a drug offense. *Id*. at 532-33. "Hence, an officer's reasonable suspicion about certain crimes does not justify the officer's extension of a stop to conduct an investigation of another crime for which the officer does not also have reasonable suspicion." *Id*. at 534 (italics omitted).

Here, however, Hamilton's statements seeking consent to search did not *extend* the stop. That is, he continued to investigate the crimes for which he had reasonable suspicion. Hamilton maintained ongoing communication with dispatch and requested a second VIN database check at approximately 1:09 a.m. Defendant voluntarily consented to a search of the van within four minutes of Hamilton's request. By the time Hamilton requested and received consent to search the van at 1:13 a.m., Hamilton's testimony indicates that he was still awaiting confirmation that the van was not stolen. Therefore, the record supports a conclusion that, at the time defendant consented to a search of the van, Hamilton was pursuing a lawful investigation: He had not yet determined whether the car was stolen, and he was unable to complete his investigation until that information came back from dispatch.

To the extent that defendant argues that the trial court "implicitly rejected the premise that the unrelated questioning took place during an unavoidable lull" in the investigation of crimes for which the officer had reasonable suspicion, we disagree. Where a trial court has not made an express finding, we presume that the court found facts consistent with its ultimate conclusion. *Watson*, 353 Or at 769. In this case, the trial court observed there were a variety of criminal issues that justified an extension of the stop. The trial court also indicated that Hamilton was involved in an investigation of the defendant's identity and "the ownership status of the vehicle, and any connection between the two." The trial court's ultimate conclusion denying the motion to suppress necessarily required a finding that Hamilton's request to search occurred in the investigation that was ongoing.

In sum, the state established that Hamilton had not yet received all of the information required to conclude the investigation, and no improper extension of the investigation had occurred when defendant gave consent to search. The trial court did not err in denying the motion to suppress. We affirm.

Affirmed.